Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ELIZABETH SKEELS, Respondent, for Compensation under the Workmen's Compensation Law, on Behalf of Herself and Infant Children for the Death of Her Husband, MYRON J. SKEELS, *v.* PAUL SMITH'S HOTEL COMPANY, Employer, Appellant, Impleaded with STATE INSURANCE FUND, Insurance Carrier, Defendant.

Third Department, January 5, 1921.

**Workmen's Compensation Law — evidence insufficient to establish contract of employment.**

In a proceeding before the State Industrial Commission for the death of claimant's husband who was killed while at work in cutting timber, *held,* on all the evidence, that he was not an employee of the alleged employer, a corporation, at the time of his death.

The jurisdictional fact of a contract of employment must be established by due process of law; by evidence which would be required to establish any other contractual relation. A mere scintilla of evidence is not sufficient.

APPEAL by the defendant, Paul Smith's Hotel Company, from an award of the State Industrial Commission, entered in the office of said Commission on the 17th day of October, 1919.

*Francis Barry Cantwell,* for the appellant.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

WOODWARD, J.:

Myron J. Skeels met his death while at work in cutting timber for wood pulp upon premises owned by the Paul Smith's Hotel Company, in the town of Brighton, Franklin county, on the 14th day of November, 1918, and the question necessary to the disposition of this appeal is whether he was an employee of that corporation at the time of his death.

On the 20th day of November, 1918, the claimant wrote a letter to the State Industrial Commission in which she says: " Enclosed find notice of death of my husband who was killed working in the lumber woods for Paul Amell." On the twenty-ninth day of November of the same year the claimant verified her formal claim, in which she stated that she made claim for compensation for " the death of Myron J. Skeels, who died on the 14th day of November, 1918, in the employ of Paul Amell, of Lake Clear, N. Y." On the thirtieth day of November of the same year the claimant again wrote the State Industrial Commission saying that " my husband was cutting wood by the cord as all the men are for Mr. Amell, and did not have a contract to cut any amount, and he worked for Mr. Amell by the day at different times. Mr. Amell is getting the wood out for Paul Smith's Hotel Co.," etc. On the fourth of December following Mr. Amell, writing to the State Industrial Commission in reference to this claim, says: " I did not have a written contract with Skeels, but had a verbal contract at a certain price per cord and his partners William Buckley and William Ryan have since Skeels' death continued work by the cord," and the letter closes with a declaration that " I was in no sense his employer, as he was an independent contractor." On the twenty-eighth of December of the same year the Paul Smith's Hotel Company wrote the State Industrial Commission saying that " Paul Amell is a pulpwood contractor, that has a verbal contract with this company to deliver pulpwood loaded on the cars at a certain price per cord, so that he is not on our payroll. * * * Amell has no authority to hire help for

this company and Skeels had no authority to hire help for Amell." A letter from Amell on the 9th day of January, 1919, continues his denial of responsibility. Buckley and Ryan make a joint affidavit to the effect that Skeels was engaged with them in a joint undertaking to cut pulpwood by the cord for Paul Amell at the Paul Smith tract, but make no suggestion that the Paul Smith's Hotel Company had any connection with the matter. Alexander Liberty in an affidavit sets forth that he was a bookkeeper for Paul Amell, and that the decedent, Skeels, with Buckley and Ryan, was engaged in cutting this pulpwood by the cord for Amell, and Paul Amell makes an affidavit to the same effect on the 13th day of January, 1919, and on the same day Paul Smith, Jr., makes an affidavit in corroboration of those previously mentioned. Subsequently Paul Smith (whether junior does not appear) appeared before one of the deputy commissioners and testified to a like state of facts. At this same hearing the claimant was examined by the deputy commissioner, and in answer to leading questions said she did not know anything about the contractual relations between her husband and Paul Smith, or between her husband and Paul Amell; that she only knew that he worked at Mr. Smith's and Paul Amell was over him; that she always thought her husband worked for Paul Smith, and that she always considered that he " was one of his employees; " that she always thought his wages came from Paul Smith.

Here we find the first subtle suggestion of Smith's relation to the death of Skeels. It is to be noted, however, that it makes no mention of the Paul Smith's Hotel Company, which is a domestic corporation having a legal entity entirely distinct and apart from the individuals who compose it, and the record shows two Paul Smiths, one designated as " Paul Smith, Jr.," and the other merely as Paul Smith, and it must be obvious that the record up to this time does not disclose any contractual relations whatever between the Paul Smith's Hotel Company and the decedent, and without such a relationship there is no foundation for the operation of the Workmen's Compensation Law. (Workmen's Compensation Law, § 2, clause 1, as amd. by Laws of 1917, chap. 705; Id. § 3, subds. 3, 4, 5, 6, 7, as amd. by Laws of 1917, chap. 705; Id. § 10; *Palmer* v. *Van Santvoord*, 153 N. Y. 612, 614; *People ex rel. Gilmour* v. *Hyde*, 89 id. 11, 17.)

There can be no employer or employee or employment, as used in the Workmen's Compensation Law, without an act of hiring (*People ex rel. Gilmour* v. *Hyde, supra*), for these words have a distinct and well-defined meaning in the jurisprudence of the State, and must be deemed to have the same meaning when used in the statutes. (*Perkins* v. *Smith,* 116 N. Y. 441.) In *Kackel* v. *Serviss* (180 App. Div. 54), followed in *Tsangournos* v. *Smith* (183 id. 751), this court held that the jurisdictional fact of a contract of employment must be established by due process of law; by evidence which would be required to establish any other contractual relation, and that in the absence of such evidence no foundation was laid for the operation of the Workmen's Compensation Law. The determination of the State Industrial Commission that Paul Smith's Hotel Company should pay the award, without evidence to support it, is not due process of law. The action of the Commission in making such a ruling, where there is no evidence of the existence of a contract of hiring, is an attempted exercise of an arbitrary power, not reaching the character of legislation. It is mere confiscation, and it is fundamental that every inhabitant of this State is entitled to retain his property until it has been judicially determined that some one else has a better right to it. Where the claim is that confiscation of property will result from the action of a commission in fixing rates, or otherwise, " the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both the law and facts " (*Ohio Valley Water Co.* v. *Ben Avon Borough,* 40 Sup. Ct. Repr. 527, 528, and authorities there cited), and unless we find in this record some evidence of a probative character that the decedent was an employee of the Paul Smith's Hotel Company the award cannot stand. Our attention is not called to any such evidence. The learned Attorney-General, in his brief, tells us that " the connection of the Paul Smith Hotel Company with the job was by the fact that it had a superintendent by the name of Owens who went around the woods to see that the wood was cut and cleaned up properly, and also to measure the wood so that money could be advanced upon it and to see that they cut in the proper locality and what trees to cut. This man was called the superintendent in the woods.

Mr. Amell says that he was there to measure the wood and give instructions what to do and how to do the work. Mr. Amell was himself a poor man, not able to pay any award, and in view of the fact that his principal, Paul Smith, advised him not to take out any insurance we think that the defendant should be held to pay the award."

No evidence is produced that Paul Smith was the principal of Mr. Amell; the uncontradicted testimony is that Mr. Amell had a verbal contract for cutting the pulpwood timber on the hotel property tract at a given price per cord, and that Owens was the man who had charge of measuring the wood as it was cut, and of seeing to it generally that Amell performed the conditions of the contract. There is not a particle of evidence that Owens had any control over Skeels, or that Amell had any control over the manner in which Skeels performed his work, except to confine him to a particular piece of land. Skeels was, by all the evidence, engaged in a joint enterprise with two other men in the cutting of pulpwood under a subcontract with Amell, and the fact that he entered into an agreement which did not entitle him to compensation from Amell, or that Amell was too poor to pay compensation, does not warrant holding the Paul Smith's Hotel Company for the amount of this award. The only foundation on which an award can lawfully be made against the Paul Smith's Hotel Company is evidence that Skeels was an employee of that corporation, and there is no evidence of this. The testimony of the claimant that she always supposed her husband worked for Mr. Smith clearly does not reach the dignity of a scintilla of evidence that the Paul Smith's Hotel Company employed the decedent, and a mere scintilla of evidence is not sufficient upon a jurisdictional question, such as is here involved. (*Matter of Case,* 214 N. Y. 199, 203, and authorities there cited.) The Legislature itself could not determine that a man was an employee, for the purpose of taking property from the alleged employer, where no such relation in fact existed — certainly not after the accident had occurred. "The true interpretation of these constitutional phrases is," say the court in *Wynehamer* v. *People* (13 N. Y. 378, 393), dealing with "law of the land" and "due process of law," "that where rights are acquired by the citizen under the existing law, there is no power in any branch

of the government to take them away; but where they are held contrary to the existing law, or are forfeited by its violation, then they may be taken from him — not by an act of the Legislature, but in the due administration of the law itself, before the judicial tribunals of the State. The cause or occasion for depriving the citizen of his supposed rights must be found in the law as it is, or, at least, it cannot be *created* by a legislative act which aims at their destruction. Where rights of property are admitted to exist, the Legislature cannot say they shall exist no longer; nor will it make any difference, although a process and a tribunal are appointed to execute the sentence." The right to contract; the right to determine whether one shall be an employer or an employee, is an essential element of that liberty guaranteed by our constitutional system, and there is no power in the Legislature to determine, or to authorize any tribunal to determine, that that relation exists where the parties themselves have not expressly or impliedly consented to occupy that relationship. In the case here under consideration no notice was given to the Paul Smith's Hotel Company that it was to be charged with the payment of an award; no one made any such claim against it. The fact that Paul Smith appeared as a witness does not give the court or tribunal jurisdiction of the Paul Smith's Hotel Company, and the rule is well settled that " no judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party." (*Scott* v. *McNeal*, 154 U. S. 34, 46.) There was no jurisdiction in the Workmen's Compensation Law except of accidents to employees, and while the State Industrial Commission probably has power to determine the question of employment primarily it cannot be permitted to charge an individual or corporation with an award where the undisputed evidence shows that there was no contract of employment.

The award appealed from should be reversed and the claim dismissed.

All concur.

Award appealed from reversed and claim dismissed.