OPINION OF THE COURT
Simons, J.
The issue presented is whether tugboats which do not actually leave New York waters but service vessels traveling in interstate and foreign commerce are exempt from State sales tax pursuant to Tax Law § 1115 (a) (8); § 1105 (c) (3) (iv), and 20 NYCRR 528.9 (a) (5).
The parties have stipulated the facts. During the tax years at issue, petitioner Moran Towing & Transportation Co., Inc. was in the business of leasing tugboats and using them to provide towing services to larger vessels entering or leaving berths in the Port of New York. Petitioner Moran Shipyard Corporation operated a shipyard for the purposes of servicing and repairing Moran Towing’s tugboats. The third corporate petitioner, Morine Supply Company, sold ropes, linens and various sundry supplies for the use of the Moran Towing tugboats.[1] Twenty-five tugboats were the subject of the Tax Commission’s audit. All provided service to vessels which were *169 traveling between States or foreign countries, but the tugs towing the vessels to and from the main navigational channel did not physically leave the waters of New York and enter interstate or international waters on some trips because some vessels did not require it.
Moran claimed that the lease payments and payments for service on all of the boats were excluded from sales taxation pursuant to Tax Law § 1115 (a) (8) and §1105 (c) (3) (iv) whether they left New York waters or not because all the vessels they served engaged in interstate or international commerce. Section 1115 (a) (8) exempts from sales and use tax receipts derived from the retail sale of "Commercial vessels primarily engaged in interstate or foreign commerce and property used by or purchased for the use of such vessels for fuel, provisions, supplies, maintenance and repairs”. Tax Law § 1105 (c) (3) exempts from sales tax services rendered with respect to commercial vessels primarily engaged in interstate or foreign commerce from sales tax.[2]
There is not, and never has been, any statutory definition of the statutory phrase "interstate or foreign commerce” but on June 1, 1977, during the audit period in this case, a regulation became effective which sought to define interstate or foreign commerce for State sales and use tax purposes as "the transportation of persons or property between states or countries” (20 NYCRR 528.9 [a] [5]). Applying that regulation, the Tax Commission took the position that taxpayers’ tugs, to be entitled to the exemption, must not only service vessels engaged in interstate or international commerce but must enter interstate or international waters in doing so. Originally, the Commission held that unless 75% of the receipts from the towing and docking services were generated on trips requiring the tugboats to actually enter interstate or international waters, the tugs were not, in the words of the statute, "primarily engaged” in interstate commerce. It later conceded that tax-exempt status should be afforded to all tugboats deriving 50% or more of their receipts from trips in which the tugs had an out-of-State destination or origin (see, Matter of Automatique, Inc. v Bouchard, 97 AD2d 183 ["primarily” as used in Tax Law § 1115 (a) (13) means more than 50%]).
Thus, the dispute narrowed to whether tax-exempt status should be afforded to four of Moran’s tugboats which serviced *170 vessels having out-of-State or foreign destinations but which did not generate 50% or more of their receipts by making tows requiring them to travel in interstate or international waters. Citing its own regulation and Matter of Niagara Junc. Ry. Co. v Creagh (2 AD2d 299, affd no opn 3 NY2d 831), the Tax Commission rejected Moran’s claim to an exemption for the four tugs stating that "[w]hile the tugboats are related to the conduct of interstate or foreign commerce, their activities are in general a local event, separate and distinct from interstate commerce”.
Moran commenced this article 78 proceeding to annul the Commission’s determination, contending that the Commission’s interpretation of the applicable statutes and regulation was contrary to the universally accepted meaning of the phrase interstate commerce and was inconsistent with the legislative intent behind the exemption statutes as shown by the legislative history. Supreme Court granted their petition and annulled the determination, but the Appellate Division reversed and dismissed. Relying on Matter of Callanan Mar. Corp. v State Tax Commn. (98 AD2d 555, 557, lv denied 62 NY2d 606), it held that interstate commerce should not be defined for purposes of State tax law as the term is used in Federal constitutional cases but by the Commission’s regulation defining interstate commerce, "the transportation of persons or property between states or countries” (20 NYCRR 528.9 [a] [5]). Conceding that the Commission’s interpretation of the phrase "narrows the broad language of Tax Law § 1115 (a) (8)”, the court nevertheless held that it was well within the Commission’s authority to interpret and implement such a broadly phrased statute (131 AD2d 960, 963). We granted leave to appeal and now reverse.
The parties agree on several matters. Moran concedes that New York State has the constitutional power to levy sales and use taxes with respect to the four tugboats even if they are engaged in interstate commerce and that the Legislature can define the phrase "interstate or foreign commerce” for State tax purposes in any manner it so desires. The Tax Commission, on the other hand, agrees with Moran that for Federal purposes petitioner’s four tugs are engaged in interstate or foreign commerce even though they themselves do not travel between States or foreign countries. Finally, both parties agree that the purpose of the statutory exemption for commercial vessels was to preserve the ship repair industry in New York by insuring that New York businesses are not put at a *171 competitive disadvantage vis-á-vis those of other States (see, 1966 NY Legis Ann, at 263a). Thus, we are confronted solely with a question of statutory interpretation: What did the Legislature mean when it exempted commercial vessels primarily engaged in interstate commerce?
Historically, interstate commerce has been defined by reference to the origin and destination of what is moved in commerce. That the taxpayer’s activities were conducted entirely within the waters of the State of New York does not affect the interstate character of those activities (see, e.g., Moran v New Orleans, 112 US 69; The Daniel Ball, 10 Wall [77 US] 557; Foster v Davenport, 22 How [63 US] 244). The focus is on what the actor does, not, where he does it. Indeed both this court and the United States Supreme Court have held that stevedoring, the business of loading and unloading ships, was part of interstate or foreign commerce provided that the goods loaded or unloaded were actually moving in foreign or interstate commerce (see, Carter & Weekes Stevedoring Co. v McGoldrick, 294 NY 906, affd sub nom. Joseph v Carter & Weekes Co., 330 US 422; Puget Sound Co. v Tax Commn., 302 US 90, both overruled on others grounds by Washington Revenue Dept. v Stevedoring Assn., 435 US 734). If stevedores are engaged in interstate commerce when they provide service to a vessel on an interstate or international voyage, there can be no doubt that Moran’s tugboats are engaged in interstate commerce when they propel or direct the interstate vessels into and out of New York harbor.
Nothing in the statutory language or legislative history suggests that the Legislature intended to depart from this long-standing and commonly accepted definition. To the contrary, the legislative history suggests that the purpose of the exemption will be furthered if the exemption applies to vessels that never leave New York waters. There is no dispute that these exceptions were designed primarily for the benefit of vessels using New York harbor. All commercial vessels have the ability to leave New York for repair purposes due to their mobile character, however, and they have every incentive to leave New York waters if they do not benefit from the exemption. According to the supporters of the legislation which became Tax Law § 1105 (c) (3) (iv), there were essentially two classes of commercial vessels using the harbor: ocean-going vessels and smaller craft, including "tugs, lighters, scows and other harbor craft serving interstate commerce. All of this floating equipment, i.e., the ocean going vessels, *172 and the harbor craft, are completely mobile and capable of seeking all of their repairing needs outside the confines of New York City” (letter of Maritime Assn, dated Mar. 3, 1966, Bill Jacket, L 1966, ch 918, at 62; see also, Division of Budget, Budget Report on Bills, id., at 57). Even the “smaller craft in New York harbor need only go to shipyards across the river in New Jersey to avoid the tax” (Mem in support of Senate Print No. 44, id., at 9). Moran’s four tugs that did not actually make 50% of their trips into interstate waters when performing their towing and mooring services are in no different position than the tugs that did make such interstate trips for purposes of determining whether the vessels would have easy access to the competing repair facilities of New Jersey. Yet the Tax Commission’s interpretation of the statute grants the exemption to tugs leaving New York waters and denies it to the four that do not.
The Commission relies on several earlier decisions addressing the statute but we find them distinguishable. In Matter of Callanan Mar. Corp. v State Tax Commn. (98 AD2d 555, lv denied 62 NY2d 606, supra) and Matter of Bronx Towing Line v State Tax Commn. (100 AD2d 711, lv denied 62 NY2d 606), a case virtually identical to Callarían, vessels of the taxpayers claiming the exemption made only incidental traverses into out-of-State waters in what were indisputably intrastáte voyages. In Matter of Great Lakes Dredge & Dock Co. v Department of Taxation & Fin. (39 NY2d 75, cert denied 429 US 832), the tax was imposed on vessels used to dredge the waterways lying within New York. It has been recognized, however, that dredging an interstate waterway is different from the actual transporting of goods through such a waterway, from the standpoint of State taxation, because it is similar to the repair of an interstate roadway or rail line; so long as the work itself is done in one State the dredges are not engaged in interstate commerce (compare, Bean Dredging Corp. v Olsen, 742 SW2d 259 [Tenn], cert denied — US —, 108 S Ct 1594, with Herbert & Sons v Woods, 539 SW2d 28 [Tenn]). Finally, the Administrative Law Judge relied on Matter of Niagara Junc. Ry. Co. v Creagh (2 AD2d 299, supra), but the Tax Commission readily concedes there was no issue in Niagara Junc, as to whether petitioner’s activities were exempt from taxation pursuant to an exemption statute and that the decision has little bearing on the issues involved here.
The Tax Commission asks us to apply familiar rules of construction which hold that a statute creating a tax exemp-
*173 tion must be construed against the taxpayer (Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y., 71 NY2d 340, 343; Matter of Grace v New York State Tax Commn., 37 NY2d 193, 195-196), that the taxpayer must establish that its interpretation of the statute is not only plausible, but also that it is the only reasonable construction (Matter of Blue Spruce Farms v New York State Tax Commn., 99 AD2d 867, affd for reasons stated below 64 NY2d 682), and that the taxpayer must show that the Tax Commission’s interpretation of the exemption’s scope is irrational or clearly erroneous (Matter of Great Lakes Dredge & Dock Co. v Department of Taxation & Fin., 39 NY2d 75, 79, cert denied 429 US 832, supra; Matter of Young v Bragalini, 3 NY2d 602, 605-606, rearg denied 4 NY2d 879).
Interpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman (62 NY2d 539, 545). Ultimately, however, legal interpretation is the court’s responsibility; it cannot be delegated to the agency charged with the statute’s enforcement. Where as in the instant case "the question is one of pure statutory reading and analysis, dependent only on an accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; accord, Servomation Corp. v State Tax Commn., 51 NY2d 608, 613). The contrary not appearing in the language of the surrounding statutes or the legislative history, we conclude that the Legislature when enacting the exemption for vessels engaged in interstate commerce intended that the phrase interstate commerce be given its "precise and well settled legal meaning in the jurisprudence of the state” (McKinney’s Cons Laws of NY, Book 1, Statutes § 233).
Accordingly, the order of the Appellate Division should be reversed, the petition granted and the judgment of Supreme Court, Albany County, reinstated.
Chief Judge Wachtler and Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, with costs, and the judgment of Supreme Court, Albany County, reinstated.

. The central issue involved in this appeal is identical for all of the petitioners. Thus for sake of simplicity all petitioners shall be referred to as one legal entity under the name of Moran or taxpayer.

. Tax Law § 1105 (c) (3) has been amended since the audit period at issue in this case but the change is nonsubstantive (see, L 1981, ch 103, § 38).