OPINION OF THE COURT
Louis C. Palella, J.
These petitions, consolidated for purposes of disposition, are hybrids brought pursuant to RPTL article 7, Agriculture and Markets Law article 25-AA and CPLR article 78. Issue has been joined, and the first cause of action of each petition, which challenges the valuation of the subject property pursuant to RPTL article 7, has been severed and noticed for trial. The remaining two causes of action of each are now submitted to the court for determination. Memoranda of law have been submitted.
• The subject property consists of about 236.48 acres consisting of two tax parcels located in the Town of Washington having the respective tax grid numbers 20-6964-00162099-00 (the larger parcel of 155.3 acres) and 20-6964-00205331-00 (the smaller parcel of 81.1 acres). The property is improved with a principal residence, an enclosed riding ring, a 4,720 square foot stable, office and tack room, a 2,528 square foot horse barn and attached shed, a 1,440 square foot workshop, a 2,500 square foot machine and storage shed, five open sheds, a closed storage shed, a 1,600 square foot horse walker, and a groom’s house.
Petitioner acquired the property in 1995 and subsequently transferred title to Chestnut Ridge Farm, L. L. C., of which petitioner holds a 99% interest. Petitioner is in full charge of the subject’s operation and has used the residential portion as his residence.
The prior owner of the subject property used a portion of the property for agricultural purposes and received an agricultural assessment for producing hay crops. At that time, the prior owner had a polo field on the property and maintained polo *781 ponies in the stables of the property. (The prior owner’s agricultural assessment has lapsed.)
It is also to be noted that in 1995 the petitioner placed a conservation easement on the entire 236.48 acres which is held by the Dutchess Land Conservatory. The easement was placed on the subject to preserve its scenic rural character and, inter alia, limits future use of the property to agricultural type activities. Also, further subdividing of the property is limited to no more than one additional single-family dwelling.
Petitioner, like his predecessor, is a horseman, and horses are kept on the property. Respondents contend that the horses kept on the subject property are polo ponies. Petitioner contends that they are show horses. (As ponies are horses, the court does not find this issue significant.)
In February 1997, petitioner submitted applications for an agricultural assessment (which is a type of partial exemption) pursuant to article 25-AA of the Agriculture and Markets Law on the ground that the subject was being used as a “commercial horse boarding operation” pursuant to section 301 (13) of the Agriculture and Markets Law. This subdivision provides: “ ‘Commercial horse boarding operation’ means an agricultural enterprise, consisting of at least ten acres and boarding at least ten horses, regardless of ownership, that receives ten thousand dollars or more in gross receipts annually from fees generated either through the boarding of horses or through the production for sale of crops, livestock, and livestock products, or through both such boarding and such production. Under no circumstances shall this subdivision be construed to include operations whose primary onsite function is horse racing.” (Emphasis supplied.)
This is the present version of the subdivision (added by L 1994, ch 556, § 2, amended by L 1995, ch 495, § 1). The original subdivision reads as follows: “13. ‘Commercial horse boarding operation’ means an agricultural enterprise, consisting of at least ten acres and having at all times at least ten horses, that receives ten thousand dollars or more in gross receipts annually from fees generated either through the boarding of horses or through the production for sale of crops, livestock, and livestock products, or through both such boarding and such production.” (Emphasis supplied.)
A separate application was submitted for each parcel. Both applications stated, inter alia, the gross receipts collected by the horse boarding operation during the preceding two years as follows: 1995 — $12,470; 1996 — $12,000. (Fees generated through production from sale of crops were stated as zero.)
*782 The application for the smaller parcel also included an application for an exemption for the shed called a horse walker pursuant to RPTL 483. This stated, inter alia, that the building construction was started in November 1996 and completed in December 1996 at a cost of $16,000.
The applications were supported by a letter dated March 10, 1997 from Patricia Ann Murphy, CPA, CVA, vice-president of Bostick, Murphy & Co., CPA’s PC, verifying the fees generated during 1995 and 1996 (supra) and naming 12 horses boarded in 1995 and 15 horses boarded in 1996. (Six of the horses listed for 1995 are also listed for 1996.) It appears from the copies of the bills and receipts included in the record that the total income for 1996 was for the boarding of one of the horses, Macanudo Dior, owned by General Cigar Co., Inc., of Bloomfield, Connecticut.
By notice dated April 16, 1997, respondent assessor denied the applications for failure to: “Satisfy the requirements to qualify as a commercial horse boarding operation” No further explanation was provided. Petitioner appealed to respondent Board of Assessment Review in May 1997. The Board denied the appeal, upholding the assessment as fair on current use. As to the agricultural assessment the Board stated: “Denial of Agricultural Value assessment supported.”
The certified record for the 1997 tax year contains two opinions in support of respondents’ denial of the agricultural assessments. The first is dated April 18, 1997 and is to the “Board of Assessors” from Mark J. Twentyman, Agricultural Valuation Specialist, New York State Office of Real Property Services, Albany, New York. Mr. Twentyman sets forth section 301 (13) of the Agriculture and Markets Law and then states:
“In my opinion commercial horse boarding is a year round operation that is available to the general public.
“In your particular case, the horse farm owner closes down the operation from December through April and moves all the horses to Florida.”
The second is a memorandum dated May 9, 1997 to Wilma Cole, Assessor’s Clerk, from Stephen D. Curran, Director, Dutchess County Real Property Tax Service Agency, Poughkeepsie, New York. Mr. Curran stated that he has researched section 305 of the Agriculture and Markets Law (Agricultural districts; effects). Mr. Curran opines, inter alia, that the fees collected for horse boarding should come from more than one horse. He does not believe that the Legislature intended to al *783 low the exemption based on a fee generated by one horse. He states that there is no requirement in Agriculture and Markets Law § 305 that an agricultural pursuit be a year-round operation, but the horse boarding must be “commercial” under the statute. He also refers to Mr. Twentyman’s opinion and opines “that in a bona fide commercial horse boarding operation, the majority of the horses would be owned by outside parties thereby supplementing the livelihood of the operator.” He believes that a lesser situation could be considered to be a hobby, as distinguished from a commercial enterprise. Mr. Curran concludes: “Since there are no finite conditions were [sic] attached to this legislation, the decision of whether to grant the [exemption] is the assessor’s. Approve the exemption if fees are generated from more than one horse, the operation is open to the general public on a 12 month/365 day basis, and there are more than 10 horses being boarded. If any other state of facts exists, the operation is questionable and the exemption should be denied.”
The proceeding for tax year 1997 was then commenced. The second and third causes of action were brought pursuant to CPLR article 78 to overturn the denial of the agricultural assessment for the horse boarding operation and the denial of an exemption pursuant to RPTL 483 for the horse walking shed. In their answer to the 1997 petition, respondents raised three affirmative defenses, viz., Statute of Limitations, failure to comply with the requirements of RPTL 483, and failure to comply with the requirements of Agriculture and Markets Law § 301 (13). There is no apparent merit to the defense of the Statute of Limitations and respondents do not address the issue.
The petition for tax year 1998 is substantially the same as that for 1997, except certain monetary amounts are different. Apparently, no answer was served to the 1998 petition, but a petition pursuant to RPTL article 7 is deemed denied (RPTL 712 [1]). The issues are the same, even though no certified record for the 1998 tax year has been submitted to the court. Counsel for each side, in their respective memorandum of law, ask the court to determine the second and third causes of action for each year in issue on the merits. The court, accordingly, shall do so, deeming the answer to the 1997 petition to apply also to the 1998 petition (CPLR 2001).
The court will address first the issue of the exemption of the shed pursuant to RPTL 483. An application for such an exemption must be made “within one year from the date of completion *784 of such construction or reconstruction” (RPTL 483 [4]) and, if. granted, the exemption has a maximum period of 10 years (RPTL 483 [6]).
In-petitioner’s memorandum of law (at 5-6) it is argued that the shed in issue should be granted the farm building exemption because that shed, as well as other sheds on the property, received this exemption in prior years. On the assessor’s building record card for 1996 this shed was given no value. Counsel then states: “Had the shed been given a value in 1996, it would have been subject to and eligible for, the exemption received by the other sheds on the property, as reflected in the property record cards. When the 1997 record cards were prepared, the building was then assessed for $1,750.00. At the time of that discovery, the applicant was precluded from applying for an exemption on that building because the structure had been in use for more than one year as dictated by statute.”
In effect, petitioner asks this court to fashion a remedy (grant an exemption) which is not provided for by the statute. The court is not persuaded, however, that it has the equitable power to do so by disregarding the one-year limitation established by the Legislature. Accordingly, the second cause of action of each petition is to be dismissed.
As to the third cause of action of each petition, the court is of the opinion, and so holds, that the denial of the agricultural assessment was illegal, arbitrary and capricious.
Although the opinions of Mr. Twentyman and Mr. Curran are not without significance, they are not determinative. Ultimately, statutory construction is the duty of the court and cannot be delegated to the agency charged with its enforcement (implementation) (Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173). Agency rules or regulations are of great import, but the opinions of Mr. Twentyman and Mr. Curran do not rise to that level. Official rules and regulations concerning application of the statute could be provided (Agriculture and Markets Law § 307), but none have been enacted.
Petitioner has shown compliance with the requirements of Agriculture and Markets Law § 301 (13). He has shown the boarding of the required number of horses and the receipt of the required sum generated by this horse boarding. There is no statutory requirement that the horse boarding be a year-round activity or that it be open to the public. In fact, the requirement that horses be boarded on the property “at all times” was deleted by the Legislature by the subdivision’s latest amend *785 ment. It is also clear that petitioner’s operation is substantial and permanent, as is evinced by the facilities constructed.
As to the $10,000 (or more) having been generated by the fees for one horse, the statute does not mandate otherwise. The required income, in fact, could be generated through production for sale of crops in whole or in part.
Pursuant to Agriculture and Markets Law § 300, the policy of the State is to encourage and foster the preservation of agricultural lands and open spaces. An assessor may not add requirements not found in the exemption law itself (People ex rel. Watchtower Bible & Tract Socy. v Haring, 8 NY2d 350, 356), and the interpretation of an exemption statute should not be so narrow and literal as to defeat its settled purpose (id., at 358).
In sum, judgment is to be granted in favor of petitioner with regard to the third cause of action in each petition, the assessments for the years in issue shall be recalculated pursuant to article 25-AA of the Agriculture and Markets Law, and any excess taxes are to be refunded with interest.