*Giuffre Hyundai v. Hyundai Motor America*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: March 20, 2014      Decided: June 25, 2014)

Docket No. 13–1886

─────────────────────────────

GIUFFRE HYUNDAI, LTD., d/b/a GIUFFRE HYUNDAI
Plaintiff–Appellant,

v.

HYUNDAI MOTOR AMERICA,
Defendant–Appellee.

─────────────────────────────

Before:       STRAUB, SACK, and LOHIER, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*) granting the defendant's motion for summary judgment and denying the plaintiff's cross-motion for partial summary judgment. The plaintiff sought to enjoin the termination of its automobile dealership contract on the ground that it was entitled to an opportunity to cure the breach occasioned by a state court's decision finding that the plaintiff had engaged in fraudulent and deceptive business practices.

AFFIRMED.

> ERIC L. CHASE (Ronald J. Campione, *on the brief*), Bressler, Amery & Ross, P.C., New York, NY, *for Plaintiff– Appellant.*

FREDERICK LIU, Hogan Lovells US LLP, Washington, DC (John J. Sullivan, Hogan Lovells US LLP, New York, NY, *on the brief*), *for Defendant–Appellee.*

SACK, *Circuit Judge*:

The plaintiff, Giuffre Hyundai, Ltd. ("Giuffre"), was an authorized dealer of Hyundai automobiles pursuant to a contract with that company's domestic affiliate, Hyundai Motor America ("HMA"). HMA terminated its contract with Giuffre after a New York State court concluded that the dealer had engaged in fraudulent, illegal, and deceptive business practices—a clear breach of the contract terms. Giuffre responded by bringing suit in the United States District Court for the Eastern District of New York seeking to enjoin the termination. Giuffre relied in pertinent part on section 463 of the New York Vehicle and Traffic Law, which provides protections to motor vehicle franchisees in their dealings with automobile manufacturers. Giuffre claimed that section 463 required HMA to provide it with notice of and an opportunity to cure the breach occasioned by the state court's ruling. The district court (Jack B. Weinstein, *Judge*) disagreed, concluding that the breach here was incurable and that HMA was therefore entitled to terminate the contract immediately, notwithstanding the terms of the Vehicle and Traffic Law. Because we conclude that section 463 does not abrogate the common law with respect to incurable breaches of contract, we affirm the district court's grant of summary judgment for HMA.

**BACKGROUND**

Giuffre Hyundai was a franchised Hyundai dealer based in Brooklyn, New York. It sold Hyundai

2

cars pursuant to a Dealer Sales and Service Agreement ("DSSA") with HMA. That contract included provisions stipulating that "HMA has selected [Giuffre] because of the reputation of its Owner(s) and the General Manager . . . for integrity and their commitment to fair dealing." DSSA 10(C)(2). It required Giuffre to refrain from "engag[ing] in any misrepresentation or unfair or deceptive trade practices." *Id.* HMA reserved the right to "terminate [the DSSA] immediately" if

> [Giuffre] or any Owner, officer, or General Manager of [Giuffre], is convicted of any felony or for any violation of law which in HMA's sole opinion tends to adversely affect the operation, management, reputation, business or interests of [Giuffre] or HMA, or to impair the good will associated with the Hyundai Marks.[1] Such violations of law may include, without limitation, any finding or adjudication by any court of competent jurisdiction or government agency that [Giuffre] has engaged in any misrepresentation or unfair or deceptive trade practice[.]

*Id.* 16(B)(1)(b).

### Giuffre's Conduct and HMA's Notice of Termination

In December 2010, New York's Attorney General brought a civil suit against Giuffre; its owner, John Giuffre; and three other dealerships he owned, alleging that they had engaged in a pattern of fraudulent and

---

[1] The DSSA defined the "Hyundai Marks" to include the various trade and service marks and logos used to market Hyundai's products. DSSA 20(H).

deceptive business practices. *See People v. Giuffre Motor Car Co.*, No. 30163/2010 (N.Y. Sup. Ct. 2010).

The New York Supreme Court, Kings County, eventually granted summary judgment for the Attorney General, ruling that the dealerships had "engaged in fraudulent and illegal business practices[,] . . . deceptive acts[,] . . . and false advertising" in violation of several New York statutes and the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq. See* Decision/Order at 7, *Giuffre Motor Car Co.*, No. 30163/2010 (N.Y. Sup. Ct. Dec. 7, 2011). Concluding that the evidence "describe[d] a common practice of strong-arm sales methods and unethical conduct," *id.* at 4, the court commented: "The list of grievances is extensive and unsettling. Multiple statutory violations appear in several individual transactions. The Court is struck by the similarity of the claims being made [by the customers] and the brazen nature of the sales persons," *id.* at 5. In response to what it called these "credible allegations of deceptive and fraudulent business practices," the court found that John Giuffre had "offered nothing more than conclusory statements in a general denial which is insufficient to defeat an award of summary judgment." *Id.* at 7.

The court enjoined the dealerships from committing further violations and ordered both restitution and civil penalties. *See* Order, *Giuffre Motor Car Co.*, No. 30163/2010 (N.Y. Sup. Ct. Feb. 22, 2012). The Attorney General eventually agreed to a total payment of $500,000 in satisfaction of the judgment. *See* Consent Order and Judgment, *Giuffre Motor Car Co.*, No. 30163/2010 (N.Y. Sup. Ct. Sept. 14, 2012).

HMA apparently learned of the Attorney General's suit and the court's decision for the first time from an October 2012 article in the *New York Post* headlined "Car biz slapped for fraud." Kevin Sheehan

and Mitchel Maddux, *Car Biz Slapped for Fraud*, N.Y. Post, Oct. 1, 2012.  On October 3, 2012, an HMA executive wrote to Giuffre, enclosing a copy of the article.  The letter notified Giuffre that the court's findings "are extremely serious and constitute a breach of [the DSSA]."  Letter from Ken Bloech, Regional General Manager, Eastern Region, HMA, to John Giuffre (Oct. 3, 2012).  Following an exchange of correspondence among counsel, on December 3, 2012, HMA sent Giuffre a letter indicating that it would terminate the DSSA in ninety days.  Letter from Ken Bloech, Regional General Manager, Eastern Region, HMA, to John Giuffre (Dec. 3, 2012) (the "Notice of Termination").  The Notice of Termination asserted that "Giuffre Hyundai is in material and incurable breach of its obligations under the [DSSA].  HMA cannot and will not voluntarily allow its products to be sold and marketed by an organization that has been found to have preyed on the consuming public . . . in the manner [Giuffre] did."  *Id.* at 4.

### *Proceedings Before the District Court*

As the termination date approached, Giuffre filed suit in the United States District Court for the Eastern District of New York, seeking, among other things, "to permanently enjoin HMA from terminating [the DSSA]" and "to declare unlawful HMA's Notice of Termination."  Compl., *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, No. 13-cv-0520 (E.D.N.Y. Jan. 29, 2013), ECF No. 1.  In addition to state and federal statutory and common law claims not relevant here,[2] Giuffre asserted

---

[2]  The district court's memorandum opinion addressed only Giuffre's claim under section 463, and Giuffre has abandoned its remaining claims by failing to give them more than cursory treatment in its brief on appeal.  *See Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating*

that HMA violated section 463 of New York's Vehicle and Traffic law by failing to provide it with notice of and an opportunity to cure its breach of the DSSA. *Id.*

Section 463 requires a motor vehicle franchisor—notwithstanding the terms of any contract—to provide a dealer franchisee written notice "of its intention to terminate . . . the franchise of such dealer at least ninety days before the effective date thereof, stating the specific grounds for such termination." N.Y. Veh. & Traf. Law § 463(2)(d)(1). The franchisee facing termination may then challenge the franchisor's decision by filing suit. *Id.* § 463(2)(e)(1).

> The issues to be determined in [such] an action . . . are whether the franchisor's notice of termination was issued with due cause and in good faith. The burden of proof shall be upon the franchisor to prove that due cause and good faith exist. The franchisor shall also have the burden of proving that all portions of its current or proposed sales and service requirements for the protesting franchised new motor vehicle dealer are reasonable.
>
> The determination of due cause shall be that there exists a material breach by a new motor vehicle dealer of a reasonable and necessary provision of a franchise if the breach is not cured within a reasonable time after written notice of the breach has

---

*Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

6

been received from the manufacturer or distributor.

*Id.* § 463(2)(e)(2).

HMA moved for summary judgment, and Giuffre cross-moved for partial summary judgment on its section 463 claim. The district court granted judgment for HMA. *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, No. 13-cv-0520, 2013 WL 1968371, 2013 U.S. Dist. LEXIS 67795 (E.D.N.Y. May 10, 2013). In a discussion confined to Giuffre's section 463 claim, the court found that the Vehicle and Traffic Law "does not modify or displace the state common law principle that a party commits a material breach of its contract with another party when it violates a provision going to the root of their agreement." *Id.* at *3, 2013 U.S. Dist. LEXIS 67795, at *7–8. A breach of this kind "is the basis for the aggrieved party to revoke or terminate the agreement without providing the other party an opportunity to cure." *Id.* at *4, 2013 U.S. Dist. LEXIS 67795, at *8.

Moreover, the district court reasoned, New York common law does not require a chance to cure "when 'doing so would amount to a useless gesture.'" *Id.*, 2013 U.S. Dist. LEXIS 67795, at *9 (quoting *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 (DLC), 2012 WL 4049955, at *15, 2012 U.S. Dist. LEXIS 131598, at *41 (S.D.N.Y. Sept. 14, 2012) (collecting cases)) (some internal quotation marks omitted). Finding that section 463 did not abrogate the common law in this respect either, the district court concluded that, after Giuffre's "egregious breach, further notice and opportunity to cure were not required because no cure was possible. . . . Anything less than termination might have frustrated—[HMA] could reasonably conclude— its attempts at rehabilitation of the public's trust in Hyundai, which was essential for a successful vendor of

7

automotive products." *Id.*, 2013 U.S. Dist. LEXIS 67795, at *10–11.

On appeal, Giuffre argues that section 463 gives franchisees an absolute right to an opportunity to cure a breach of a motor vehicle dealership franchise contract, and that material disputes of fact exist regarding the materiality of Giuffre's breach and the sufficiency of HMA's Notice of Termination. In the alternative, Giuffre asks us to seek guidance on the meaning of section 463 from the New York Court of Appeals by certifying that question to the court.

**DISCUSSION**

"We review an order granting summary judgment *de novo* and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013) (internal quotation marks and brackets omitted), *cert. denied*, 134 S. Ct. 1510 (2014). Summary judgment is appropriate when, "construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

The central issue in this appeal is whether HMA's termination of Giuffre's franchise complied with New York's Vehicle and Traffic Law. In an action seeking to enjoin termination of a franchise agreement under section 463, the franchisor must establish that it acted with "due cause." N.Y. Veh. & Traf. Law § 463(2)(e)(2). Due cause exists where there has been "a *material breach* by a new motor vehicle dealer of a reasonable and necessary provision of a franchise if the breach is not *cured within a reasonable time* after written notice of the

8

breach." *Id.* (emphases added). While we have not found or been pointed to a published decision construing this portion of the statute, there is ample common law precedent interpreting the operative terms under New York law. We therefore need not, and decline to, certify any questions of law to the New York Court of Appeals. *See DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir.) ("Issues of state law are not to be routinely certified to the highest court of New York simply because a certification procedure is available." (alterations omitted)), *cert. denied*, 546 U.S. 939 (2005). Indeed, "it is our job to predict how the forum state's highest court would decide the issues before us," and, as a consequence, "we will not certify questions of law where sufficient precedents exist for us to make this determination." *Id.* (internal quotation marks omitted).

We therefore proceed to address the merits of Giuffre's appeal. We conclude that HMA's termination of the DSSA was lawful, that the record presents no genuine dispute as to any material fact, and that HMA was therefore entitled to summary judgment.

New York courts presume that the state's legislators were "aware of the law in existence at the time of an enactment and [intended to] abrogate[ ] the common law only to the extent that the clear import of the language of the statute requires." *B & F Bldg. Corp. v. Liebig*, 76 N.Y.2d 689, 693, 564 N.E.2d 650, 652 (1990); *accord Arbegast v. Bd. of Educ. of S. New Berlin Cent. Sch.*, 65 N.Y.2d 161, 169, 480 N.E.2d 365, 371 (1985). Moreover, the legislature itself has instructed that "[w]ords of technical or special meaning are construed according to their technical sense, in the absence of anything to indicate a contrary legislative intent." N.Y. Stat. Law § 233. Thus, "words [that] have a distinct and well-defined meaning in the jurisprudence of the State . . . must be deemed to have the same meaning

9

when used in the statutes." *Skeels v. Paul Smith's Hotel Co.*, 195 A.D. 39, 42, 185 N.Y.S. 665, 668 (3d Dep't 1921); *accord Moran Towing & Transp. Co. v. N.Y.S. Tax Comm'n*, 72 N.Y.2d 166, 173, 527 N.E.2d 763, 767 (1988) (citing N.Y. Stat. Law § 233).

New York common law will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless, or if the breach undermines the entire contractual relationship such that it cannot be cured.[3] *See, e.g., Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (compliance with cure provision "is not required where it would amount to a 'useless gesture'"); *Miller v. Wells Fargo Bank, N.A.*, No. 13-cv-1541, 2014 WL 349723, at *6 n.6, 2014 U.S. Dist. LEXIS 14060, at *15 n.6 (S.D.N.Y. Jan. 30, 2014) (opportunity to cure is not required where futile); *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 230 (E.D.N.Y. 2013) ("Under New York law, the law governing this case, a contract may be terminated without notice and opportunity to cure where there is sufficient evidence of fraud, even where contractual provisions require such notice."); *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 246–48 (E.D.N.Y. 1999) (compliance with cure provision not required where franchisee's alleged fraud undermined the "very essence of the contract").

In particular, "'New York law permits a party to terminate a contract immediately, without affording the breaching party notice and opportunity to cure . . . when the [breaching party's] misfeasance is incurable

---

[3] Contract case law is all the more pertinent here since section 463 is self-evidently a statute intended to supply what are essentially mandatory contract terms in agreements where they do not otherwise exist.

10

and when the cure is unfeasible.'" *Sea Tow Servs. Int'l, Inc. v. Pontin*, 607 F. Supp. 2d 378, 389 (E.D.N.Y. 2009) (quoting *Needham v. Candie's, Inc.*, No. 01 Civ. 7184(LTS)(FM), 2002 WL 1896892, at *4, 2002 U.S. Dist. LEXIS 15144, at *11–12 (S.D.N.Y. Aug. 16, 2002), *aff'd*, 65 F. App'x 339 (2d Cir. 2003) (citations omitted)); *accord Hicksville Mach. Works Corp. v. Eagle Precision, Inc.*, 222 A.D.2d 556, 557, 635 N.Y.S.2d 300, 302 (2d Dep't 1995) (asserted "right to cure" irrelevant where "there was no evidence in the record to support the proposition that a cure was possible"); *see also Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*, 271 A.D.2d 636, 639, 706 N.Y.S.2d 724, 726 (2d Dep't 2000) (employee's misfeasance was "not . . . curable," and would not have been subject to a notice-and-cure provision had the contract contained one). When contracting parties agree to a notice-and-cure provision, it is reasonable to assume that they do so with the assumption "that the breaches which would be used to terminate the contract would be *curable* breaches." *In re Best Film & Video Corp.*, 46 B.R. 861, 874-75 (Bankr. E.D.N.Y. 1985) (emphasis in original) (quoting Corbin on Contracts, 1982 Supplement by Colin K. Kaufman, Part 2, § 1266, at 369–70). It is no less reasonable to presume that the legislature operated under the same expectation in drafting section 463.

Even without considering the common law backdrop against which section 463 was drafted, New York law is clear that, "[a]lthough statutes will ordinarily be accorded their plain meaning, . . . courts should construe them to avoid objectionable, unreasonable or absurd consequences." *Long v. State*, 7 N.Y.3d 269, 273, 852 N.E.2d 1150, 1153 (2006) (citation omitted); N.Y. Stat. Law § 143 ("Generally, statutes will be given a reasonable construction, it being presumed that a reasonable result was intended by the

11

Legislature."). Section 463 speaks in terms of a "reasonable time" to cure. It would be patently unreasonable to require a franchisor to endure an incurable breach in service of an empty "opportunity" to cure. Similarly, the legislature is unlikely to have intended that courts be drawn into such absurdities as what constitutes a "reasonable time" to accomplish that which cannot be accomplished. We see no reason to depart from the common sense common-law doctrine of incurable breach in interpreting section 463. *See H. Kauffman & Sons Saddlery Co. v. Miller*, 298 N.Y. 38, 44, 80 N.E.2d 322, 325 (1948) (rejecting "an interpretation of [a statute's] words which would so clearly offend against common sense").

Turning to the facts of this case, we conclude that the state court's judgment established as a matter of law an incurable, material breach of a reasonable and necessary provision of the DSSA. *See* N.Y. Veh. & Traf. Law § 463(2)(e)(2). This provided HMA with due cause to terminate the Agreement without further delay. First, the provision at issue here was self-evidently reasonable and necessary. We will not ascribe to the legislature the intent to bar HMA from conditioning its commercial relationships on basic standards of honesty and fair dealing. *See* N.Y. Stat. Law § 152 ("A construction of a statute which tends to sacrifice or prejudice the public interests will be avoided.").

Second, the breach here was material and not susceptible of cure. The state court judgment established that Giuffre was "engaged in fraudulent and illegal business practices . . . deceptive acts . . . and false advertising" in violation of state and federal law. *See* Decision/Order, *Giuffre*, No. 30163/2010, at 7. Indeed, the court found that Giuffre and its related dealerships had "a common practice of strong-arm sales methods and unethical conduct." *Id.* at 4. Giuffre never

12

appealed or otherwise legally challenged these findings and conclusions, and the time to appeal that decision has long since passed. *See* N.Y. C.P.L.R. § 5513 (time to appeal is generally thirty days from service of a judgment on the party bringing the appeal). There was, therefore, not merely "evidence" of fraudulent conduct on the part of Giuffre—it was an adjudicated fact.

That judgment is conclusive evidence of Giuffre's breach of the unambiguous terms of the DSSA, which provides that the Agreement may be terminated if Giuffre "or any Owner, officer, or General Manager of [Giuffre], is convicted of any felony or for any violation of law which in HMA's sole opinion tends to adversely affect the operation, management, reputation, business or interests of [Giuffre] or HMA, or to impair the good will associated with the Hyundai Marks." DSSA 16(B)(1)(b). Setting aside the references to HMA's "sole opinion" and "immediate" termination, which Giuffre contends are displaced by the Vehicle and Traffic Law, Giuffre remains in clear breach of the DSSA, which defines the relevant "violations of law" to include "any finding or adjudication by any court of competent jurisdiction or government agency that [Giuffre] has engaged in any misrepresentation or unfair or deceptive trade practice." *Id.* Moreover, because the Agreement speaks in terms of adjudicated misfeasance, rather than simple conduct, the breach is not one which subsequent good behavior could correct.

## CONCLUSION

For these reasons, we agree with the district court that the judgment of the state court was a "reputation poisoning" incapable of cure. *Giuffre Hyundai*, No. 13-cv-0520, 2013 WL 1968371, at *4; 2013 U.S. Dist. LEXIS 67795, at *11; *see also In re Best Film & Video Corp.*, 46 B.R. at 875 ("Courts, using their good sense, will be able to

13

tell breaches which excuse the obligation to give notice from breaches which do not." (quoting Corbin on Contracts, 1982 Supplement by Colin K. Kaufman, Part 2, § 1266, at 369–70)).  Having provided Giuffre with the statutorily required written notice of termination ninety days before terminating the DSSA, HMA was under no obligation to further extend its dealings with a franchisee who had been adjudged to have "engaged in fraudulent and illegal business practices[,] . . . deceptive acts[,] . . . and false advertising."[4]

We therefore AFFIRM the judgment of the district court.

---

[4] Giuffre also argues that it was never given sufficient notice, beyond the 90-day Notice of Termination, to allow an opportunity to cure.  Because we conclude that Giuffre's breach was incurable, we need not address this argument.  We observe nonetheless that HMA's letter of October 3, 2012, notified Giuffre that the state court's findings "are extremely serious and constitute a breach of [the DSSA]" two months before HMA issued the Notice of Termination.  Letter from Ken Bloech, Regional General Manager, Eastern Region, HMA, to John Giuffre (Oct. 3, 2012).