East Empire Constr. Inc. v Borough Constr. Group LLC (2021 NY Slip Op 05455)





East Empire Constr. Inc. v Borough Constr. Group LLC


2021 NY Slip Op 05455


Decided on October 12, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 12, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Anil C. Singh Tanya R. Kennedy Manuel Mendez John R. Higgitt


Index No. 655963/16 Appeal No. 14220 Case No. 2020-04836 

[*1]East Empire Construction Inc., Plaintiff-Respondent,
v
Borough Construction Group LLC, et al., Defendants-Appellants, CPR Money LLC, et al., Defendants.



Defendants appeal from an order of the Supreme Court, New York County (Barbara Jaffe, J.), entered on or about November 1, 2019, which, insofar as appealed from, granted plaintiff's motion for summary judgment as to liability on its breach of contract claim against defendant Borough Construction Group LLC and dismissing defendants' eleventh affirmative defense.




Tuttle Yick LLP, New York (David G. Skillman of counsel), for appellants.
Ingram Yuzek Gainen Carroll & Bertolotti, LLP, New York (Maurizio Anglani of counsel), for respondent.



ACOSTA, P. J. 


This breach of contract case, in which plaintiff alleges that defendant failed to comply with the notice-to-cure provision before terminating the contract, gives us the opportunity to address the strict nature of these types of provisions and the very rare instances when they can be ignored. Defendant general contractor terminated the steel work subcontract it had entered into with plaintiff based on what was essentially a claim that plaintiff provided faulty work. As discussed in more detail below, defendant was obligated to give plaintiff the 10-day notice to cure provided in the contract, as faulty work does not fall within the very limited and rare circumstances when the provision can be dispensed with, namely, where the other party expressly repudiates the contract or abandons performance or where the breach is impossible to cure.
In 2015, defendant Borough Construction Group LLC (Borough), as general contractor for defendant property owner 952 Columbus LLC (Owner), subcontracted with plaintiff to perform steel work at the residential development project located at 952 Columbus Avenue. As relevant here, the subcontract required plaintiff to supply and install all steel needed for "Support of Excavation" and for construction of the structural steel frame of the new building, and to secure and pay for the crane permits for installation. In addition, the subcontract required plaintiff to provide a full-time, on-site safety manager, take reasonable safety precautions, and comply with applicable ordinances, codes, and safety measures.
Section 3.4 of the subcontract provides,
"If the Subcontractor [plaintiff] defaults or neglects to carry out the Work . . . fails within five working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may . . . make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor."
Section 7.2.1 provides,
"If the Subcontractor repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise fails to perform in accordance with this Subcontract and fails within a ten-day period after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor [Borough] may by written notice[*2][,] . . . terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient."
The subcontract rider, schedule A, provided the owner (as opposed to Borough) with a shorter notice period. The rider provides,
"If for any reason the Subcontractor fails to perform to the degree and standards set forth by the Owner, he will be issued [a 72-hour] Notice to Cure. Should the Subcontractor fail to rectify and remedy the situation within that timeframe, the Owner will remove Subcontractor from the Project and any and all costs and all fees associated with the Subcontractor's failure to perform will be back-charged and deducted from any monies owed to the Subcontractor."
On May 9, 2016, Borough sent plaintiff a written "notice of termination" stating that the subcontract would be terminated in three days from the date of the letter and that plaintiff was in default by "failing to provide sufficient manpower [] [and] failing to meet the schedule, safety regulations and qualified workmanship for the Project." The letter further stated that plaintiff "failed to respond or delayed response to requests for crane usage" and "has delayed the performance and completion of the work." The letter instructed plaintiff to cease work immediately. After negotiations, Borough cancelled the termination notice, and plaintiff returned to the job. However, on May 16, 2016, Borough sent plaintiff an identical notice of termination and directed plaintiff to cease operations. Borough subsequently retained a new steel subcontractor.
In November 2016, plaintiff brought this action, asserting a breach of contract claim against Borough and quasi contract claims against Owner. The complaint alleges that Borough breached the subcontract by improperly terminating plaintiff from the project on May 16, 2016 without good cause and without providing plaintiff with the appropriate notice and opportunity to cure the alleged default, and it asserts that plaintiff is owed over $225,000 for outstanding invoices for construction services performed on the project.
In March 2019, plaintiff moved, as relevant here, for summary judgment as to liability on its breach of contract claim against Borough and dismissing defendants' eleventh affirmative defense, which seeks setoffs for costs incurred in curing plaintiff's allegedly defective work, on the grounds that Borough did not give plaintiff the chance to "commence and continue correction" of its alleged breach, as required by the subcontract. Plaintiff argued that nothing in the record showed that the alleged defects were impossible to cure or amounted to a repudiation of the subcontract so as to render futile a notice-to-cure, and that this failure by Borough to follow the notice-to-cure requirements precluded Borough from attempting to recover or offset its costs associated with the alleged deficiencies in plaintiff's performance.
In opposition, defendants alleged persistent, incurable acts [*3]of negligence and numerous safety violations and delays by plaintiff from the outset that resulted in defendants' engineering consultant's total shutdown of the work site as of May 16. They argued that, at the very least, triable issues of fact existed as to whether plaintiff had created a situation so deficient and dangerous that it could not be remedied within the cure period and that plaintiff, which had been directed to cease operations due to safety concerns, could not be trusted to attempt to cure the deficient performance.
Supreme Court granted plaintiff's motion. We now affirm.
The termination of plaintiff's subcontract by Borough, the general contractor, required Borough's compliance with subcontract Section 7.2.1, which expressly provided that plaintiff first be given the opportunity to "commence and continue correction" of the defaults within a 10-day period from the termination notice. The subcontract rider, schedule A, which allowed Owner to remove plaintiff from the project if it failed to rectify or remedy a deficiency identified by the Owner within a three-day (72 hour) period, is not applicable to termination by Borough.[FN1]

Our case law is clear that a party's termination is ineffective where the relevant contract provides for a notice-to-cure and notice is not provided (see New Image Constr., Inc. v TDR Enters. Inc., 74 AD3d 680 [1st Dept 2010]; see also Filmline [Cross—Country] Prods., Inc. v United Artists Corp, 865 F2d 513, 518 [2d Cir 1989]). This approach gives effect to the principle that, generally, where contracting parties agree on a termination procedure, the procedure will be enforced as written (see e.g. General Supply & Constr. Co. v Goelet, 241 NY 28, 34 [1925]). There are limited circumstances where despite being contractually required, notice to cure is not necessary, such as where the other party expressly repudiates the contract or abandons performance (see Tenavision, Inc. v Neuman, 45 NY2d 145, 150 [1978] [a repudiation occurs only when a party makes an "announcement of an intention not to perform" in a "positive and unequivocal" manner]; Kleinberg Elec., Inc. v E-J Elec. Installation Co., 111 AD3d 410 [1st Dept 2013] [repudiation by abandonment]; EMF Gen. Contr. Corp. v Bisbee, 6 AD3d 45, 49-50 [1st Dept 2004] ["To establish abandonment of a contract by conduct, it must be shown that the conduct is mutual, positive, unequivocal, and inconsistent with the intent to be bound" . . . "a finding of an abandonment will be based upon clear, affirmative conduct . . . that is entirely at odds with the contract"], lv denied 3 NY3d 607 [2004]; see also Point Prods. A.G. v Sony Music Entertainment, Inc., 2000 WL 1006236, *3, 2000 US Dist LEXIS 10066, *12 [SD NY 2000] ["strict adherence to cure provision would have been a 'useless act' given plaintiff's abandonment of contract and unjustified ultimatums"], citing Wolff & Munier, Inc. v Whiting-Turner Contr. Co., 946 F2d 1003, 1009 [2d Cir 1991]).
Furthermore, [*4]notice to cure is not required where the breach is impossible to cure, or so substantial that it "undermines the entire contractual relationship such that it cannot be cured" (Giuffre Hyundai, Ltd. v Hyundai Motor Am., 756 F3d 204, 209-210 [2d Cir 2014] [invoking New York common law]). This is based on "the common law contract principle that . . . a material breach that goes to the root of the matter or the essence of the contract constitutes grounds for rescission without opportunity to cure" (Sea Tow Servs. Intl., Inc. v Pontin, 607 F Supp 2d 378, 389 [ED NY 2009] ["when the misfeasance is incurable and when the cure is unfeasible"] [internal quotation marks omitted]).
Nothing in the record supports the conclusion that the plaintiff repudiated or abandoned the contract or could not have commenced and continued correction of the steel frame and other alleged safety violations in the 10-day period following receipt of notice to cure. Thus, the court correctly rejected Borough's argument that issues of fact exist as to whether it was justified in depriving plaintiff of an opportunity to cure. Indeed, the alleged default, faulty steelwork, constitutes nothing more than defective performance, which is "the very situation to which the cure provision was intended to apply" (Rebh v Lake George Ventures, 223 AD2d 986, 987 [3d Dept 1996]). Moreover, even if plaintiff had a "poor safety record," as Borough contends, that does not render the notice-to-cure provision inapplicable, since there is no evidence that the defects were impossible to cure. Notably, we agree with the court that by cancelling its first termination notice, Borough indicated that it did not mean to proceed with the termination and that there was no emergency that had to be rectified in 10 days.
The eleventh affirmative defense, which seeks offsets based on Borough's expenses incurred in curing plaintiff's work, as well as other pre-termination expenses incurred due to plaintiff's delays and other deficient work, was correctly dismissed. Borough failed to comply with Section 3.4 of the subcontract, which required five days' notice and an opportunity to cure before it could correct plaintiff's alleged deficiencies and deduct the reasonable cost thereof from payments due to plaintiff (see Northeast Constr. Group, Inc. v Deconstruction, Inc., 16 AD3d 357 [1st Dept 2005], lv denied 5 NY3d 709 [2005]).
Accordingly, the order of the Supreme Court, New York County (Barbara Jaffe, J.), entered on or about November 1, 2019, which, insofar as appealed from, granted plaintiff's motion for summary judgment as to liability on its breach of contract claim against defendant Borough Construction Group LLC and dismissing defendants' eleventh affirmative defense, should be affirmed, without costs.
Order, Supreme Court, New York County (Barbara Jaffe, J.), entered on or about November 1, 2019, affirmed, without costs.
Opinion by Acosta, P.J. All concur.
Acosta, P.J., Singh, Kennedy, Mendez, Higgitt[*5], JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 12, 2021



Footnotes

Footnote 1:In any event, by directing it to "cease all work . . . immediately," Borough wrongfully terminated plaintiff regardless of whether the applicable cure period was 72 hours per the rider or 10 days per the subcontract.