Judge WESLEY dissents in'a separate opinion.
REENA RAGGI, Circuit Judge:
In this breach-of-contract action, plaintiff Bank of New York Mellon Trust Company, N.A. (“BNY” or “Trustee”) appeals an award of summary judgment in favor of defendant Morgan Stanley Mortgage Capital, Inc. (“Morgan Stanley”) entered, on June 17,2014, in the United States District Court for the Southern District of New York (Colleen McMahon, Judge). BNY argues that the.district court erred in concluding, as a matter of law, that Morgan Stanley was not contractually, obliged to repurchase a mortgage loan allegedly issued in breach of a contract .representation because (1) the Trustee’s duty to give “notice to cure” within three business days of becoming aware of a material breach was a condition precedent to the seller’s repurchase obligation, Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc., No. 11 Civ. 0505(CM)(GWG) (“BNY /”), 2013 WL 3146824 (S.D.N.Y. June 19, 2013); and (2) that condition was not per-forméd within the specified three days, but two to four weeks later, see Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc., No. 11 Civ. 0505(CM)(GWG) (“BNY II”), 2014 WL 2745011 (S.D.N.Y. June 16, 2014).
For reasons explained herein, we conclude that the contract at issue did not require notice to cure as a condition precedent to Morgan Stanley remedying breach. *300 Indeed, the phrase “notice to cure” does not appear in the contract. Rather, the contract contains distinct provisions for giving notice of breach and making request for cure, neither of which is cast in the express language of condition. . To the extent a condition precedent might be inferred from the fact that notice of breach is a necessary trigger for the 90-day cure period, that rationale would pertain only to the giving of that notice, not to its timeliness, and much less to request for cure, which performs no triggering role. Thus, request for cure is not a condition precedent to Morgan Stanley’s remedy obligations, and the timeliness of a request for cure, as well as of a notice of breach, is properly construed as a promise and reviewed for substantial performance.
On review of the record, we further conclude that the notice of breach and request for cure in this case cannot be held untimely as a matter of law, particularly when reviewed for substantial performance. Accordingly, we vacate the award of summary judgment in favor of Morgan Stanley, and we remand the' case to the district court for further proceedings consistent with this opinion.
I. Background
A. The Mortgage' Loan Purchase Agreement
The contract at issue is a May 1, 2007 Mortgage Loan Purchase Agreement (“MLPA”), pertaining to an. $81 million mortgage loan that Morgan Stanley issued to City View Center, LLC (the “City View Loan”) on December 29, 2006, for the purchase of a retail center in Garfield Heights, Ohio (the “City View Property”). Pursuant to the MLPA, Morgan Stanley sold the City View Loan to Morgan Stanley Capital I, Inc., which, pursuant to a Pooling and Servicing Agreement..(“PSA”) of the same date, placed the City View Loan into Morgan Stanley Capital I Trust 20Ó7-IQ14 (the “Trust”), then valued at nearly five billion dollars. The Trust was later securitized and sold to investors.
The PSA designated BNY as trustee of the Trust and, thus, the entity entitled to enforce various' agreements, including the MLPA here at issue. The PSA also designated Wells Fargo National Association (‘Wells Fargo”) as a Master Servicer, responsible for administering the Trust’s loans and collecting payments, and Center-line Servicing Inc. (“Centerline”) as Special Servicer, responsible for servicing any defaulted loans.[1] On May 30, 2007, Trustee BNY granted the Master and Special Servicers authority to act on its behalf when servicing and administering the Trust’s loans.
B. City Vieio’s Default on the Loan
On September 9, 2008, Master Servicer Wells Fargo informed Special Servicer Centerline that the City View Loan would likely go into default within 60 days because (1) City View had ,received numerous notices of lease default from Wal-Mart, the anchor tenant of the City View Property, based on methane gas intrusion into the store; (2) the' Ohio Attorney General had filed a complaint against City View (and others) for- regulatory violations on the City View Property, including the failure to control the migration of combustible gases; and (3) the Ohio Agency for Toxic Substances & Disease Registry had determined that conditions at the City View *301 Property amounted to an urgent public hazard. On September 15, 2008, Wal-Mart in fact closed its City View Property store and, soon after, canceled its lease. On November 8, 2008, City View defaulted on a mortgage-loan payment. Four-days later, Wells Fargo transferred the City View Loan to Centerline for special servicing.
C. Notice of Breach and Request for . , Cure
Upon transfer, Centerline’s Director of Special Servicing, Jennifer Wilkicki, began investigating Morgan Stanley’s possible breach of the MLPA.[2] On February 16, 2009,- Wilkicki sent a document captioned “Representation and Warranty Claim” to Centerline’s Associate General Counsel, Jenna Unell. That four-page document appears to be a draft notice of breach to the Seller in that its opening' sentence states as follows: '“The Special- Servicer believes it has discovered a. Material Breach of the Seller’s Representations, and Warranties and hereby provides notice as required by the governing Pooling and Servicing Agreement,” J.A. 896. The document proceeds to identify “Representation/Warranty (12)” as the .provision breached -.insofar as Morgan Stanley had represented that, it had “no knowledge of any material and adverse environmental condition or circumstance” affecting' the City View Property not disclosed in a referenced Environmental Report when it had, in fact, learned otherwise. Id. (internal quotation marks omitted).[3] The document supports this conclusion by citing Morgan Stanley’s January 5, 2007 Closing Counsel- Transaction Summary,, which acknowledged the Environmental Report’s failure to 'address the fact that the City View Property was subject to state regulation as- a “closed land fill” and that the property had received “numerous ‘notices of violation’ issued by the Ohio. Environmental Protection Agency.” Id.[4] The document also details “additional facts ,.. to demonstrate the material and adverse effect” the noticed breach had on “the interests of the holders of the Certificates in the Mortgage Loan.” Id.; see id. at 897-98. Among these were Wal-Mart’s departure from the City View Property and its cessation of rent payments, as a result of which other tenants exercised co-tenancy *302 clauses resulting in terminated leases, reduced rents, or discontinued rent payments. The document also explains that this left City View with insufficient operating income, • causing it to discontinue loan payments'to the Trust,-which now faced the legal expenses of petitioning “the federal court to place a receiver at the property/’ proceeding against defaulting tenants, and appealing the rejection of City View’s insurance claim. Id. at 898. - Attributing the catalogued adverse ‘effects - to Morgan Stanley’s breach of Representation 12, the[1] document concluded, “[-t]he Mortgage Loan should be- repurchased pursuant to the terms and Conditions set forth in the PSA and the applicable MLPA.” Id. : ■
Three days later, on February 19, 2009, Unell advised Wilkicki that she had reviewed pertinent materials and . agreed “that there [was] evidence that [Morgan Stanley] knew that there were material environmental conditions or circumstances affecting the Property that were not disclosed in the Phase I report.” Id. at 1266. Unell asked Wilkicki to call her “to discuss further,” concluding, “I think that the breach notice should be sent.” Id.
A breach notice was sent approximately one month later, on March 18, 2009. In the interim, Wilkicki secured an appraisal, which on February 27, 2009, valued the City View Property at $22.3 million, a steep decline from the $103.4 million appraisal of .two years earlier. Another appraisal, confirming the $22.3 million valuation, was received on March 13,2009.
Between receipt of these two appraisals, on March 3, 2009, Wilkicki sent Unell a more formally worded draft breach notice and ■ request. for cure, and solicited her comments. On March 13, Unell emailed Wilkicki her edits to the draft notice. The next day, Wilkicki sent the.revised draft to her supervisor, Chris Crouch, who approved it on March 16 and directed Wilk-icki to send it on to Centerline’s President, Paul Smyth, “fór go ahead to release,” Id. at 1347. After receiving Smyth’s ¿uthori-zation for release, Wilkicki sent- Morgan Stanley a formal notice of breach and request for cure» on. March 18, 2009. Tracking language in the MLPA and PSA,, the notice stated that if the material. breach were .not corrected or cured within 90 days of receipt, Morgan Stanley would be contractually obligated to repurchase or to replace the City View Loan. It is, in -fact, undisputed on this appeal that the breach was one that could-not be-cured.. :
Approximately two months later, by letter dated May 11, 2009, Morgan- Stanley replied that it disagreed with Centerline’s “characterization-of-the facts and circumstances” and “intended] to vigorously defend its underwriting and disclosures made in the PSA and the Mortgage Loan.” Id. at 1093. Thus, it did not repurchase or replace the.City View Loan. .,
On September 24, 2010, the Special Ser-vicer sent Morgan ’Stanley a “Second and Supplemental Notification.- of Material Breach.” In addition to alleging. more facts to support the earlier noticed breach of Representation 12, it asserted a breach of Representation 27, the MLPA’s No Material Default Representation.[5] In its De *303 cember 22, 2010 reply, Morgan Stanley reiterated its intent to defend its representations, and asserted that the Special Ser-vicer’s March 18, 2009 and September 24, 2010 letters were, in any event, deficient because they “cónstitute[d] late notice.” Id. at 1096. : ■
D, District Court Proceedings
On January 25, 2011, ■ BNY filed this lawsuit against Morgan Stanley for breach of the MLPA. Following amended pleadings and discovery, both parties moved for summary judgment: Qn June 19, 2013, the district court granted Morgan Stanley partial summary' judgment on BNY’s breach claim as to the No Material Default Representation provision.[6] That ruling is not at issue on this appeal. As to the claimed breach of the Environmental Conditions Representation, the district court granted BNY summary judgment on Morgan Stanley’s waiver defense, but concluded that “many issues,, of disputed fact” precluded a general, award in favor of BNY., SAT J, 2013 WL 3146824, at *30. Although. the district court agreed with Morgan Stanley that timely “notice to cure” was a “condition precedent” to any buyback obligation for breach of the Environmental Conditions Representation, it decided that further discovery was needed to determine when the Special Servicer became aware of that alleged breach. Id. at *16-17; see id. at *19-22.
After discovery closed, the district court determined, as a. matter of law, "that BNY’s “Special Servicer became aware .of a material breach of the Environmental Representation more than three business days before March 18, 2009,” making its breach notice on that date untimely, thereby failing to satisfy that condition precedent to Morgan Stanley’s repurchase obligation. BNY II, 2014 WL 2745011, at *7-9. Accordingly, on June 17; -2014, the district court entered.summary judgment in favor of Morgan Stanley on- the Environmental Representation breach claim.
This timely appeal followed.
II.. Discussion
This appeal. presents two questions for de novo review: (1) whether the MLPA’s request-for-cure obligation- is a condition precedent that must be timely performed by the Servicer before Morgan Stanley has any obligation , to cure or to repurchase a noticed defective loan; - and (2) whether it can be determined.- as a matter of law on the existing record that the request for cure in this case was untimely. See Lynch v. City of New York, 737 F.3d 150, 156 (2d Cir.2013) (reviewing award of summary judgment de novo and upholding only if “there is no genuine issue of material fact” qnd “moving party is entitled to judgment as a matter of law”); Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir.2007) (interpreting contract de novo). We answer both questions , in the negative and, therefore, vacate the award of summary judgment in favor of Morgan Stanley and remand the case to the district court for further proceedings consistent with 'this opinion'.
A. MLPA Section 5’s Remedies Provision ■ ■
The district court derived the condition precedent it identified — an obligation to *304 give “notice to cure” within three business days of the Servicer becoming aware of a material breach — from MLPA Section 5, titled “Remedies Upon Breach of-Representations and Warranties Made .by the Seller.” Thus, we begin by examining the relevant text, which states as follows:
[I]f there is a breach of any of the representations and warranties required to be made by the Seller regarding the characteristics of the Mortgage Loans and/or the related Mortgaged Properties ... and ... [such] breach, either (i) materially and adversely affects the interests of the- holders of the Certificates in the related Mortgage Loan, or (ii) both (A) the ... breach materially and adversely affects the value of the Mortgage Loan and (B) the Mortgage Loan is a Specially Serviced Mortgage Loan ..., [1] the party discovering such ... Material Breach shall promptly notify, in writing, the other party..[2] Promptly (but in any event within three Business Days) upon becoming aware of any such ... Material Breach, the Master Servicer shall, and the Special Servi-cer may, request that the Seller, not later than 90 days from the Seller’s receipt of the notice of siach ... Material Breach, cure such ... ' Material Breach____
[3], The Seller hereby covenants and agrees that, if any such ... Material Breach cannot be corrected or cured in all material aspects within the above cure period[ ], the Seller shall, on or before the termination of such cure period!], either (i) repurchase the affected Mortgage Loan ... from the Purchaser or its assignee at the Purchase Price as defined in the Pooling and Servicing Agreement, or (ii) if within the two-year period commencing on the Closing Date, at its option replace, without recourse, any Mortgage Loan ... to which such defect relates with a Qualifying Substitute Mortgage Loan. If such ... Material Breach would cause the Mortgage Loan to be other than a “qualified mortgage” (as"defined in the Code), then notwithstanding the previous sentence, such repurchase or substitution, must occur, within 90 days from the earlier of the date the.Seller discovered or was notified of the breach or defect.
J.A. 454-55 (emphasis added).[7]
In fact, the quoted language identifies three obligations (corresponding to the inserted highlighted numbers). First, a notice-of-breach obligation, which requires any party — whether the Trustee, Master Servicer, Special Servicer, or even the Seller — “discovering” a material breach of representation promptly to notify the other party of its discovery of such breach. Second, a request-for-cure obligation, which requires the Master Servicer, and permits the Special Servicer, promptly, but in any event within three business days of “becoming aware” of the material breach, to request that the Seller cure' breach within 90 days of 'the receipt of notice. Third, a cure-or-repurchase obligation, which requires the Seller either (a) to cure the material breach within 90 days of receiving notice, or (b) if the breach cannot be cured, to repurchase or to replace the defective mortgage loan.
As this parsing demonstrates, Section 5 nowhere references “notice to cure.” We understand the district court to have used *305 that phrase,as a shorthand.reference for both the ,notice-of-breach and request-for-cure obligations, concluding that where, as in this case, the Servicer is the party, “discovering” the material breach, it can be said to have become “aware” of the breach (triggering its request-for-cure obligation) ■at the samp time it “discovered” it (triggering its notice-of-breach obligation). See BNY I, 2013 WL 3146824, at *20. As we explain in the next section of this opinion, that reasoning is not without some force in explaining how a common trigger date applies to these two MLPA obligations in the circumstances of this case. See infra pp. 309-10. But, it does not-support merging the provisions for purposes of condition-precedent review. Indeed, Morgan Stanley defends the district court’s identification of a condition precedent only by reference to the requestrfor-cure obligation. Accordingly, we here decide whether request for cure is a condition precedent.to Morgan Stanley’s obligation to cure or repurchase. . ,
B. Bequest for Cure Is Not a" Condition Precedent to Cure or Repurchase
Under New York law, which controls our construction of the MLPA, a condition precedent is “an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.” Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 737, 660 N.E.2d 415 (1995) (internal quotation marks omitted). Conditions precedent are not readily assumed. While specific, talis-manic. words are not required, the law nevertheless demands that conditions precedent be “ ‘expressed in unmistakable language.’ ” Id. at 691, 636 NY.S.2d at 737, 660 N.E.2d 415 (quoting Restatement (Second) of Contracts § 229, cmt. a, at 185). Thus, “[i]n determining whether a particular agreement makes an event a condition[,] .courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition.” Id.; see Unigard Sec. Ins. Co. v. N. River Ins. Co., 79 N.Y.2d 576, 581, 584 N.Y.S.2d 290, 292, 594 N.E.2d 571 (1992); see also Israel v. Chabra, 537 F.3d 86, 93 (2d Cir.2008) (citing Oppenheimer in acknowledging New York courts’ caution when interpreting contract clause as condition precedent). Applying these principles here, we conclude that, under the MLPA, the Servicer’s obligation to request cure within ■ three business days of becoming aware of a material breach is not unmistakably cast.as a condition precedent to Morgan Stanley’s cure-or-repurchase obligation, and, therefore, must be construed as a promise.
Certainly, the MLPA does not caption or otherwise label -the request-for-cure provision as a “condition precedent” to Section 5 remedies, as one might expect sophisticated parties to do if that were their intent. See, e.g., Lindenbaum v. Royco Prop. Corp., 165 A.D.2d 254, 259, 567 N.Y.S.2d 218, 220 (1st Dep’t 1991) (concluding that contract clearly imposed condition precedent where, under heading “Conditions of Loan Approval,” parties expressly noted that certain “conditions must be satisfied prior to "the issuance of Closing Instructions” (emphasis omitted)).
Nor does MLPA Section 5 employ any recognized “linguistic conventions” of condition — such as “‘if,’ ‘on condition that,’ ‘provided that,’ -‘in the event that/' and ‘subject to/ ” — to make plain that Morgan Stanley’s remedy obligations do not arise unless and until the ■ Servicer requests cure. Israel v. Chabra, 537 F.3d at 93 (quoting Ginett v. Comput. Task Grp., 962 F.2d 1085, 1100 (2d Cir.1992)) (identifying notice obligation introduced by under *306 scored phrase “provided, hoivever,” as condition precedent to immediately preceding guaranties); see Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d at 691, 636 NY.S.2d at 737, 660 N.E.2d 415 (recognizing “if’ and “unless and until” as “unmistakable language of condition”).
The failure to couch the request-for-cure provision in the explicit languáge of condition is particularly significant here because the sophisticated drafters elsewhere employed precisely such language to establish undoubted conditions precedent. See, e.g., J.A. 448 (providing - in MLPA for certain actions “in the event that ... the Mortgage Loans ... are held to be the property of the Seller” (emphasis added)); id. at 450 (providing in MLPA for agent or designee to exercise purchaser’s rights “provided the Purchaser,has provided the Seller with prior notice of .the. identity of such designee or agent” (emphasis added)); see also id. at 264 (stating in PSA that “successor master servicer must assume all of the obligations of the terminated Master Servicer ... as a condition precedent to its becoming Master Servicer hereunder” (emphasis added)); id. at 341 (stating in PSA that, “as a condition precedent to the indemnification provided for in this Section,” indemnitee must “notify the applicable Indemnifying Party in writing” of commencement of any action (emphasis added)).[8]
Indeed, even within MLPA Section 5, its drafters employed the unmistakable language of condition in detailing Morgan Stanley’s repurchase obligation. See id. at 455 (stating that Seller “covenants and agrees that, if any such ... Material Breach cannot be corrected or cured in all material aspects within the [90-day] cure period [ ■]; the’ Seller shall ... either (i) repurchase the affected Mortgage Loan ...: or (ii) ■ ... ’replace, without recourse, any Mortgage Loan” (emphasis added)). In short, Section 5 makes plain that Mor-gán Stanley is required to repurchase or replace a defective loan only if it is unable to cure the defective representation within the 90-day period afforded by the MLPA. There is no comparable contract language, however, that conditions this remedy obligation on a request for cure, much less on such a request being made within three business days. See Realtime Data, LLC v. Melone, 104 A.D.3d 748, 750-51, 961 N.Y.S.2d 275, 277-78 (2d Dep’t 2013) (invoking canon expressio unius est exclusio alterius to conclude that contract language conditioning employee bonus “upon” sale of assets implies that bonus does not apply to distributions otherwise based); see also International Fid. Ins. Co. v. County of Rockland, 98 F.Supp.2d 400, 412 (S.D.N.Y.2000) (recognizing that “[sophisticated lawyers ... must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how tó use *307 different words and construction to establish distinctions in meaning”).
Thus, the very contract language employed by the parties undermines our dissenting colleague’s conclusión'that Morgan Stanley cannot be expected to cure breaches of which it has been notified but for which it has not received a formal request for cure. See Dissenting Op., post at 315-17. In fact, its obligation to repurchase is. conditioned only on its inability to cure within the 90-day cure period. And, as the MLPA makes clear, that cure period is triggered exclusively by “the Seller’s receipt of the notice of ... Material Breach,” not the Servicer’s request for cure. J.A. 454 (emphasis added).
■While New York courts have construed some triggering events as conditions precedent, they have done so only when the trigger is necessary to a party’s ability to perform the obligation at issue. See, e.g., ALJ Capital I, L.P. v. David J. Joseph Co., 15 Misc.3d 1127(A), 2007 WL 1218355, at *2, *5 (Sup.Ct. Mar. 13, 2007) (holding notice of disallowance a condition precedent to defendant’s repayment obligation because, notice was necessary to afford defendant opportunity ■ to cure disallowance within cure period, upon failure of which plaintiff could demand repayment), aff'd 48 A.D.3d 208, 208, 851 N.Y.S.2d 154, 155 (1st Dep’t 2008); see also Assured Guar. Mun. Corp. v. DB Structured Prods., Inc., 33 Misc.3d 720, 731, 742-44, 927 N.Y.S.2d 880, 887-88, 895-97 (Sup.Ct. July 25, 2011) (assuming that notice of breach triggering 60-day cure period was condition precedent to repurchase obligation in holding notice adequate); Morgan Guar. Tr. Co. v. Bay View Franchise Mortg. Acceptance Co., No. 00 Civ. 8613(SAS), 2002 'WL 818082, at *4-5 (S.D.N.Y. Apr. 30, 2002) (applying New York law in recognizing request to cure as condition precedent where it was exclusive trigger for 30-day cure period, which, if not met, gave rise to repurchase obligation). -
Even if the MLPA’s notice-of-breach provision might be construed as a condition precedent because it is the necessary trigger for the cure period afforded Morgan Stanley,[9] its request-for-cure provision serves no comparable essential function without which Morgan Stanley could not understand or perform its cure obligation. Because we are not free to “rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction,” Slamow v. Del Col, 174 A.D.2d 725, 726, 571 N.Y.S.2d 335, 336 (2d Dep’t 1991), we here conclude simply that whatever triggering rationale might , apply to notice of-breach, it does not extend to request for cure. The plain language of the MLPA obligates Morgan Stanley to cure or to repurchase a noticed defective loan within 90 days of the receipt of a notice of breach. The .obligation makes no mention of receipt of a request for cure.[10]
*308 Thus, when the district court held that “sending- a notice to cure is unmistakably required to trigger the cure period and the . buyback-obligation,” BNY I, 2013 WL 3146824, at *17 (emphasis added), it could only have been - referring to the MLPA’s notice-of-breach obligation, the exclusive trigger for the 90-day period. That same conclusion pertains to the district court’s statement that, because the MLPA’s repurchase provision “expressly refers back to the notice to cure,” Morgan Stanley’s obligation to repurchase is “dependent on that notice.” Id. (alteration and internal quotation marks omitted). What the repurchase provision expressly refers back to is “the date the Seller discovered or was notified of the breach or defect,” J.A. 455; it nowhere mentions “notice to cure.” The district court went on, however, to conclude that “notice to cure” was a condition precedent that had to be. performed within three business days: “The notice to cure is a condition precedent- to the repurchase obligation, and the parties plainly bargained for the ‘three day* provision in the contract.” BNY I, 2013 WL 3146824,. at *21. We disagree. Even if the first part of the quoted sentence might find support in -the MLPA’s noticé-of-breach obligation, the parties did- not plainly bargain to subject notice of breach To the three-day limitation applicable only to request for cure. Indeed, when it recited that “[t]he MLPA gave the Special Servicer three days to send out notice of any breach,” BNY II, 2014 WL 2745011, at' *3, the district court misstated the contract.
In sum, because (1) the obligation to request cure within three business days is neither framed in conditional language nor a necessary trigger for Morgan Stanley’s remedy obligations; (2) notice of breach is, in fact, the exclusive trigger for the 90-day period within which, Morgan Stanley was obligated to cure or to repurchase; and (3) the timeliness of notice of breach is not contractually limited to three days, we conclude that the MLPA cannot be construed to make either notice of breach within three business days or request for cure conditions precedent to Morgan Stanley’s remedy obligations. See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d at 691, 636 N.Y.S.2d at 737, 660 N.E.2d 415. Rather, timely request Tor cure is properly construed as a promise, which on remand should be reviewed only for substantial performance. See Israel v. Chabra, 537 F.3d at 93.
C. The Timing of the Servicer’s Request for Cure Cannot Preclude. a Finding of Substantial Performance as a Matter of Law
The district court determined, as a matter of law, that the Servicer’s March •18, 2009 communication to Morgan Stanley of notice of breach and request for cure was untimely. See BNY II, 2014 WL 2745011, at *9.iWe here conclude that the timing of the Servicer’s request for cure cannot preclude a finding of 'substantial performance as- a matter of law. In explaining this conclusion, we first examine the reasoning informing the district court’s timeliness analysis, some of which we ac *309 cept, but other parts of which are at odds with the plain language of the MLPA.
As already detailed; the MLPA requires a party to give notice of breach promptly upon discovering a material breach of representation. It also requires a Servicer to act promptly in requesting cure after becoming aware of the breach. But it is only as to the latter obligation that the MLPA cabins promptness to three business days. The district court, however, appears to have concluded that where, as here,, the Servicer, is the discovering party, notice of breach is not prompt if not made within three days. See id. at *3 (“The MLPA gave the. Special Servicer three days to send out notice of any breach.”); id. at *9 (holding that, because Servicer’s notice to Morgan Stanley was not sent within three business days of what court found to be “absolute, drop-dead date” for awareness of breach, “breach notice was therefore untimely”). In view of the Servicer’s having discovered the breach, the district court concluded that (1) any difference in the obligations’ triggering words — “discovering,” and “becoming aware of’ — was “of no moment,” BNY I, 2013 WL '3146824, at *20; (2) awareness, like discovery, occurs only at the conclusion of an investigation of the suspected breach, provided the inyésti-gation is concluded within a reasonable time, see id. at *19-21; (3) the Servicer had reasonably concluded its investigation and, thus, become “aware” of Morgan Stanley’s alleged breach (a) by “February 16, when Wilkicki prepared‘her memorandum” to Unell, or certainly (b) “by February 19, when Unell agreed with Wilkieki’s assessment and instructed her to send the breach notice,” but in no event later than (c) “February 27, when the draft appraisal came in,” BNY II, 2014 WL 2745Ó11, at *9. Thus, the Servicer’s delay of some two weeks after the .last of these «lates to transmit a request for cure was held untimely as a matter of law. .
BNY faults this reasoning on several grounds. We focus- here on the argu-, ment it derives from the well established principle that,, where contract provisions use different language, courts must assume the parties--intended different meanings. See Frank B. Hall & Co. of N.Y. v. Orient Overseas Assocs., 48 N.Y.2d 958, 959, 425 N.Y.S.2d 66, 67, 401 N.E.2d 189 (1979). Thus, BNY argues, “discovering” breach must mean something different from “becoming aware” of breach, with “awareness” necessarily coming after “discovery” — indeed, -after communication of the notice of breach triggered by discovery — to avoid the absurdity of requiring a Servicer to' request cure (within three business days of awareness) before requiring the 'party discovering the breach to give notice (subject to an undefined promptness obligation), thereby triggering the cure period.
BNY’s argument makes sense when the Servicer is not the .party discovering the breach. In that circumstance, it will generally only be upon receipt of the discoverer’s notice of breach that the Servicer acquires the awareness necessary for it to request cure. Further, to the extent the discoverer conducted an investigation of the breach that the .Servicer has no need to duplicate, the latter can reasonably be expected to make its request for cure within three business days of receiving the notice of breach.
But, when- the Servicer is the party discovering breach, we cannot categorically conclude, as BNY urges, that it does not become aware of the breach until it transmits its own notice of breach to others. Dictionary definitions may admit the possibility of discovery without awareness. Compare Webster’s Third New Int’l Dictionary 656 (2002) («iefining “discover” as “to obtain for the first time *310 sight or knowledge of’ or “to detect the presence of’), with id. at 152 (defining “aware” as “marked by realization, perception, or knowledge”).[11] The conclusion, however, does not transfer here, where, as the district court correctly observed, the law charges á party with discovery of breach only after it has had a reasonable opportunity to investigate and confirm its suspicions — in short, when it effectively becomes aware, rather than simply suspicious, of breach. The reason the law thus delays discovery of a breach is to avoid creating an incentive -for litigation before a party knows that it has suffered injury. See BNY I, 2018 WL 3146824, at *19 (collecting cases); id. at *21 (acknowledging that, in complex circumstances, confirming investigation can take several months).
We therefore decline to hold as a matter of law that a Servicer who discovers a breach cannot be charged with awareness until it transmits notice. The fact that the Servicer in this case simultaneously transmitted its request for cure with its notice of breach does not necessarily mean that the former was filed within the requisite three business days. Rather, the timeliness of both notice of breach and request for cure may depend,_ as the district court recognized, on whether they were sent promptly after the Special Servicer reasonably concluded its investigation of breach.,
Where we depart from the district court is in its conclusion that notice of breach, as well as request for cure, had to be communicated within three business days to be deemed prompt. As already, discussed, the MLPA imposes a three-day limitation; on the word “promptly” only as to requests for cure. The absence of such a limitation from the notice-of-breach obligation indicates that the word is to be construed more flexibly in light of the totality of circumstances. See United States Fid. & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 233, 501 N.Y.S.2d 790, 792, 492 N.E.2d 1206 (1986) (recognizing that where condition included in one provision is omitted from another, it “must be assumed to have been intentional under accepted canons of contract construction”); Sterling Inv’r Servs., Inc. v. 1155 Nobo Assocs., LLC, 30 A.D.3d 579, 581, 818 N.Y.S.2d 513, 516 (2d Dep’t 2006) (same).
We further conclude that the district court could not identify the reasonable conclusion date for the Special Servi-cer’s breach investigation — or even three possible conclusion dates — as a matter of law. Where the promptness of breach discovery is questioned, resolution depends on an assessment of the totality of circumstances, necessarily including the credibility of witnesses and the weight particular evidence will bear. ' Such matters are generally determined by the trier of fact rather than the court, particularly when the ultimate question is reasonableness. See Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028, 1030, 416 N.Y.S.2d 539, 541, 389 N.E.2d 1061 (1979) (noting that “question whether a notice ... has been sent ‘as soon as is reasonably possible’ is a question of fact which depends on all the facts and circumstances, especially the length of and. the, reasons for the delay,” and that “[i]t is only in the exceptional case that it may be decided as a matter of law”); Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 691, 143 N.E.2d 889 (1957) (explaining that “reasonableness of. a delay” in timely written notice is usually question for jury); *311 Vale v. Vt. Mut. Ins. Grp., 112 A.D.3d 1011, 1013, 977 N.Y.S.2d 117, 120 (3d Dep’t 2013) (stating that where party.fails to comply with condition precedent requiring timely notice, delay may be excused if reasonable, which will generally be “question of fact for a jury”). Thus, while the district court identified February 27, 2009, the date Wilkicki received a draft appraisal fór the City View Property, as “the absolute, drop-dead date” for a reasonable investigation to have concluded, a factfinder might determine that wheré, as here, the investigating party is not an individual but a corporate entity, some degree of chain-of-eommand review is part of a reasonable investigation, and the entity should be permitted to undertake such review before it is charged' with discovering or becoming aware of the breach. Were the jury to so find in this case, it could extend the investigation’s conclusion date to March 16, 2009, when Centerline’s president was first asked to authorize the notice of breach and request for cure based on the investigation of his subordinates. In that event, the March 18, 2009 transmittal would have been prompt even under a three-business-day limitation.[12]
.Of course, even if a factfinder were to include chain:of-command review within a reasonable breach-investigation period, disputes- might persist as to whether other events — e.g., commissioning the initial or review appraisals — unreasonably prolonged the investigation. While the district court dismissed Wilkicki’s explanations for these appraisals as implausible, when we view the record hr the light most favorable to BNY, we' Cannot conclude that a reasonable factfinder was precluded as a matter of law from reaching any other conclusion. .Thus, the dispute cannot be resolved on summary judgment. See, e.g., Dillon v. Morano, 497 F.3d 247, 253-54 (2d Cir.2007) (vacating award of summary judgment where, permissibility of defendant’s conduct turned on explanation for it, which necessarily involved credibility determination that was question for jury).
Further, because request for cure is not a condition precedent, even if a factfinder were to conclude that the time for reasonable investigation of breach ended more than three business days before March 18, 2009, it would still have to decide the question of substantial performance. ■
“Substantial performance is performance, the deviations permitted being minor, unimportant, inadvertent, and unin *312 tentional.” Cramer v. Esswein, 220 A.D. 10, 11, 220 N.Y.S. 634, 634 (2d Dep’t 1927) (internal quotation marks omitted); see Bernard v. Las Ams. Commc’ns, Inc., 84 F.3d 103, 108 (2d Cir.1996); Callanan Indus., Inc. v. Smiroldo, 100 A.D.2d 717, 718, 474 N.Y.S.2d. 611, 612 (3d Dep’t 1984). Such deviations “will sometimes be . atoned for by allowance of the resulting damage.” Jacob & Youngs, Inc. v. Kent, 230 N.Y. 239, 241, 129 N.E. 889.(1921) (Cardozo, J.).
The question of' substantial performance is usually one “of fact and should be decided as a matter of law only where the inferences are certain.” Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir.2007) (collecting cases, including Hadden v. Consol. Edison Co. of N.Y., 34 N.Y.2d 88, 96, 356 N.Y.S.2d 249, 255, 312 N.E.2d 445 (1974) (assessing substantial performance on basis of several factors such as absolute and relative magnitude of default, its effect on contract’s purpose, willfulness, and degree to which injured party was benefited under contract)). Thus, while .BNY points to a number of factors supporting substantial performance, we do not here decide the question in its favor as a matter of law. We conclude only that the record does not permit substantial performance to be rejected as a matter of law. See Jacob & Youngs, Inc. v. Kent, 230 N.Y. at 243, 129 N.E. 889 (explaining that substantial performance is question of degree, which, “if there is doubt,” must be answered by “triers of the facts”).
In reaching that conclusion, we reiterate certain undisputed facts. First, BNY did transmit a request for cure to Morgan Stanley; thus, the only performance issue is timeliness. Second, the delay in transmittal, even on the district court’s findings, was in the range of two to four weeks. Third, the noticed breach of representation was not curable, regardless of the date when BNY can be charged with awareness of the breach.
These circumstances strongly support substantial performance insofar as delay in requesting a cure that was never possible would likely be deemed trivial. As this court recently had occasion to note, “[w]hen contracting parties agree to a notice-and-cure provision, it is reasonable to assume that they do so with the assumption that the breaches which would be used to terminate the contract would be curable breaches.” Giuffre Hyundai, Ltd. v. Hyundai Motor Am., 756 F.3d 204, 210 (2d Cir.2014) (internal quotation marks omitted) (emphasis in original). Thus, “New York common law will pot require strict compliance with a contractual notice- and-eure provision if providing an opportunity to cure would be useless.” Id. at 209 (collecting eases),
Morgan Stanley attempts to distinguish Giuffre and the cases cited therein on the ground that they considered the propriety of actions taken by parties who, instead of providing opportunity to cure, terminated contracts or commenced actions for damages. It submits that the futility of cure here is no excuse for the Servicer’s failure timely to request cure because that “is the only mechanism for Morgan Stanley’s obligation to be triggered.” Appellee Br. 46. The argument fails because, as we have already concluded, notice of breach, not request for cure, is the singular trigger for Morgan Stanley’s remedy obligations. Further, it is by no means evident that the timeliness of notice is essential to this trigger because the 90-day cure period would not begin to run until notice was received and any harm to Morgan Stanley from a delay in notice could offset its remedy obligations. See 63 N.Y. Jur.2d, Guaranty & Suretyship § 134 (2006) (stating that where giving notice within specified time is not condition precedent to *313 liability, ‘‘consequence of not giving such notice may be to relieve or exonerate” the party entitled to notice “only to the extent of the damage sustained by reason of the ■omission”); see also Jacob & Youngs, Inc. v. Kent, 230 N.Y. at 241, 129 N.E. 889. Thus, the impossibility of cure is properly recognized as a factor that ■ here could weigh in favor of substantial performance on remand.
Accordingly, because the timeliness of the Special Servicer’s request for cure should not. have been determined as a matter of law and because a reasonable jury could- find that, even if there was some delay in requesting cure, the Special Servi-cer substantially performed this MLPA obligation, these questions of timeliness and substantial performance cannot be decided in favor of Morgan Stanley on summary judgment but must be presented, to the factfinder at trial.
III. Conclusion
To summarize, we conclude as follows:
1. “Notice to. cure” is not a phrase that appears in the MLPA and, thus, cannot be identified as a condition precedent to Morgan Stanley’s MLPA cure-or-repurchase obligation.
2. The request-for-cure obligation that the MLPA imposes on the Special Servicer is properly construed as a promise rather than ás a condition precedent because it neither employs the linguistic conventions of condition nor serves as a trigger for the cure period at issue.
3. Even if the MLPA’s notice-of-breach obligation could be construed as a condition precedent because it triggers the 90-day cure period — a matter we need not decide as no party advances the argument — that rationale would not extend to the timeliness of the notice, which has no triggering effect, much less to a three-day time limitation, which doe's not cabin the notice-of-breach obligation as it does the request-for-cure obligation.
4. The fact that the notice-of-breach obligation arises upon a party’s “discovering” breach while the request-for-cure obligation, arises upon a Servicer’s “becoming aware” of the breach does not admit the categorical conclusion, urged by BNY, that the time for requesting cure cannot run before notice of breach is given, particularly where, as here, the Servicer is the party discovering breach.
5. Under New York law, a reasonable time for investigation is afforded before a party can be said to have discovered or become aware of a breach.
6. Questions of fact as to the reasonableness of time taken to investigate the alleged breach of the MLPA’s Environmental Conditions Representation preclude finding, as a matter of law, that request for cure was untimely, particularly when reviewed for substantial performance.
The .judgment of the district court is, therefore,: VACATED, and the case is REMANDED for- further proceedings consistent with this opinion.

. On May 10, 2010, pursuant to transactions not relevant here, C-III Asset Management LLC replaced Centerline as the Trust’s Special Servicer. For purposes of this appeal, we need only refer herein to the “Special Servi-cer,” without régard to the specific entity then serving in that capacity.

. As the district court detailed, Wilkicki was not then totally unfamiliar with the City View Loan. Prior to securitization, Centerline (and its predecessor) had acted--as Interim .Servicer at Morgan Stanley’s behest. Centerline’s parent company was then evaluating whether to invest in the Trust, and Wilkicki was among the Centerline employees who conducted, due diligence. See BNY I, 2013 WL 3146824, at *3, *25. The district court explained why the Trustee cannot be charged with knowledge obtained by Centerline when not acting on its behalf, see id, at *25-29, and the parties do not argue otherwise on this appeal. Thus, we . do not discuss that further.

. Representation 12 is entitled “Environmental Conditions” and states as follows:
(i) With respect to the Mortgaged Properties securing the Mortgage Loans ... an environmental site assessment, or an update of a previous such report, was performed with respect to each Mortgaged Property in connection with the. origination or the acquisition of the related Mortgage Loan; a report of each such assessment (or the most recent assessment with respect to each • Mortgaged Property) (an "Environmental Report") has been delivered to the Purchaser, and the Seller has no knowledge of any materiál and adverse environmental condition or circumstance affecting any Mortgaged Property that was-not disclosed in such report.
J.A. 473 (emphasis in original).

,On this appeal, we express ho view as to the merits of the Servicer's (and, therefore, Trustee BNY’s) breach conclusion.- We'consider only whether BNY failed to satisfy an MLPA condition-precedent for securing a remedy for breach.

. In Representation 27, Morgan Stanley war.rantied that, to its knowledge, there was "no material default, breach, .violation or event of acceleration, (and no event which, with the passage of time or the giving of notice, or both, would constitute any of the foregoing) under the documents evidencing or securing the Mortgage Loan” that would materially .and, adversely affect the value of the mortgage loan or property. J.A, 478-79. The Special Servicer asserted, that Morgan ..Stanley breached this representation because, by December 2006, at the latest, it knew, that Wal-Mart was claiming lease, default, and yet Mor *303 gan Stanley represented in May 2007 that there was no material default underlying the City View.Loan. See id. at 781-82..

. The" district court concluded that the Special Servicer had possession of all facts necessary to investigate and bring a claim for breach of this representation by March 16, 2009, making its September 24, 2010 notice of .breach untimely, . See BNY I, 2013 WL 3146824, at *23. This conclusion is -not challenged on appeal and, thus, we do not discuss it'further.

. Section 2.3(a) of'the PSA contains similar, but not identical, breach and recourse language. See J.A, 121-22, The district court focused on the language in the MLPA as it was the only contract to which Morgan Stanley was a party. As neither party challenges that approach on appeal, we do the same without considering any language discrepancies between the MLPA and the PSA.

. There is no indication that BNY played any .part in drafting-the MLPA. Rather, Morgan .Stanley appears to have drafted this document, as the same Morgan Stanley Vice Presi- ' debt signed the agreement on behalf of both Morgan Stanley and Morgan Stanley Capital I, Inc., the sole contracting parties. See J.A. 465. While BNY, as the named Trustee, is a party to the PSA, there is no indication in the record as to its role in drafting that agreement. In any event, because the point is not raised, we .have no occasion to consider whether any ambiguities in MLPA provisions ate properly construed against Morgan Stanley as drafter. See Village of Ilion v. County of Herkimer, 23 N.Y.3d 812, 820, 993 N.Y.S.2d 648, 652, 18 N.E.3d 359 (2014). It suffices that the law requires ambiguous provisions to be construed as promises rather than conditions precedent. See Oppenheimer & Co., v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d at 691, 636 N.Y.S.2d at 737, 660 N.E.2d 415.

. We need not decide this question because, as earlier noted, Morgan Stanley defends the district court’s judgment only by reference to the contract’s request-for-cure obligation.

. Judge Wesley deems it implausible that Morgan Stanley would be obligated to cure in the absence of. a request. He maintains that because the Special Servicer was under no obligation to request cure, its request for cure provided essential signaling and demand functions. See Dissenting Op., post at 315-17, 316 n. 4. The conclusion is undermined not only by the 'MLPA’s express assignment of the signaling function to notice of breach, but also to its assignment of a mandatory request-for-cure obligation to the Master Servicer. See J.A. 454 (explaining that, upon becoming aware of any material breach, Master Servi-cer-must, and Special Servicer may, request cure). We need not parse the difference between the Master Servicer's and the Special Servicer’s request-for-cure obligations further because, in any event, the MLPA has not *308 unequivocally identified request for cure as a condition precedent, Thus, in the situation here, where Morgan Stanley is alleged to have breached its cure-or-repurchase obligation and the Servicer is alleged to have breached its. obligation to request cure within three days, the law considers two broken promises (three, when one considers Morgan Stanley’s alleged breach of Representation 12) and compensates the parties accordingly, taking into account, among other things, the issue of substantial performance. See, e.g., Schwartz v. Pierce, 57 A.D.3d 1348, 1350-51, 870 N.Y.S.2d 161, 163-65 (3d Dep’t 2008) (affirming damages award where jury found both parties to be in: breach of contract).

. Thus, Columbus can be said to have .discovered the Americas without' being ■ aware that they were new continents, while Vespucci can be said to have been aware that the Americas were new continents without having discovered them.

. Judge Wesley disagrees, observing that, under New York law, a corporation is charged with the knowledge of its agents. See Dissenting Op., post at 318. ..But none of the cited cases reach that conclusion in the context of a corporate entity conducting a breach investigation, much less one doing so as the agent of a trustee. New York University v. First Financial Insurance Co., 322 F.3d 750 (2d Cir.2003), does not offer "precisely this situation," Dissenting Op., post at 320 n! 12, because that case involved neither an agent acting on behalf of a trustee nor a breach investigation similar in nature or scope to. the . one at issue here., Instead, an insurer was there charged with its investigative agent’s knowledge of breach' as of the date the insured conceded certain facts to the agent that effectively admitted the breach precluding recovery under the insurance contract. See New York Univ. v. First Fin. Ins. Co., 322 F.3d at 753 & n. 2. Here, Morgan Stanley did not similarly confirm its breach of the MLPA to Wilkicki. As already noted, in such circumstances, the law affords a reasonable time for investigation of breach to avoid creating an incentive for premature litigation. That concern supports including some chain-of-command review within a reasonable investigation, rather than demanding action as soon as any corporate agent reaches a conclusion regardless of his authority to act on it for the corporatiori. See Kirschner v. KPMG LLP, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 508, 517, 938 N.E.2d 941 (2010) (acknowledging that, generally, only acts within scope of agents’ authority are "presumptively imputed to their principals”).

. See also 13 Williston on Contracts § 38:16 (4th ed.. 2000) ("Any words which, when properly inteipreted or construed by the court, make clear the notion that the performance of a promise in a contract is dependent on some other act or event will create an express condition.”).